**BRANDON CHRYSLER PLYMOUTH JEEP EAGLE, INC., Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

No. 94–897–CIV–T–24(E).

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 8, 1995.

---

James D. Adams, Marc E. Brandes, A. Edward Quinton, III, Adams & Quinton, P.A., Boca Raton, FL, for plaintiff.

Dean Bunch, Cabaniss, Burke & Wagner, P.A., Tallahassee, FL, for defendant.

## ORDER

BUCKLEW, District Judge.

Before the Court are the parties' cross motions for summary judgment (D–11 & D–16). Plaintiff, Brandon Chrysler Plymouth Jeep Eagle, Inc. ("Brandon") moves for partial summary judgment (D–11) asserting that Defendant Chrysler Corporation's ("Chrysler") warranty reimbursement practices for automobile parts are contrary to Florida law. In opposition, Chrysler moves for summary judgment (D–16) on all claims of Brandon's complaint.

## BACKGROUND

Plaintiff is a franchised motor vehicle dealer and holder of a franchise agreement with the Defendant, as defined in sections 320.60(1) and (11) of the Florida Statutes. *Fla.Stat.* §§ 320.60(1), (11) (1993). Defendant is an automobile manufacturer and a licensee under § 320.61 of the Florida Statutes. *Fla.Stat.* § 320.61 (1993). A franchise agreement between two such parties in the industry is commonly known as a Sales and Service Agreement ("SSA") and defines the manufacturer-dealer relationship.

On or about August 24, 1993, Chrysler and Brandon entered into a SSA in which Brandon became or continued as a dealer for Chrysler, Plymouth, Jeep and Eagle cars and trucks (D–17, Ex. 1–A). Under these agreements, Brandon contracted to perform all warranty service on Chrysler products, in return for Chrysler's commitment to reimburse Brandon in accordance with its policies as stated in its "Warranty Policy and Procedure Manual"[1] ("Manual") (D–17, Ex. 1–A, ¶ 11(b)). Section 3D of the Manual provides

---

**1.** This Manual sets forth the contractual rights and obligations of the parties in terms of warranty parts reimbursement and is incorporated by reference in the SSA (D–17, Ex. 1–A., ¶ 11).

specific guidelines for warranty parts reimbursement.[2]

In addition to the contractual warranty obligations between the parties, the Florida Automobile Dealer Act, *Fla.Stat.* § 320.01 et seq. (1993) ("Dealer Act"), also governs certain aspects of the parties' relationship. In particular, § 320.696 of the Dealer Act addresses a manufacturer's warranty reimbursement obligation. That section provides:

> The licensee shall reasonably and timely compensate any authorized motor vehicle dealer who performs work to rectify the licensee's product or warranty defects or fulfills delivery and preparation obligations. In the determination of what constitutes reasonable compensation under this section, the factors to be given consideration shall include, among others, the compensation being paid by other licensees to their dealers, the prevailing wage rate being paid by the dealers, and the prevailing labor rate being charged by the dealers, in the city or community in which the dealer is doing business.[3] For the purpose of this section, reasonable compensation for work by a motor vehicle dealer for warranty repairs service on behalf of a licensee shall not be determined to be less than the amount charged by the dealer for like work to retail customers for nonwarranty repairs and service, unless the licensee can demonstrate and establish in a proceeding before the department that the dealer's retail charges for labor are improper in light of all economic circumstances. Compensation not paid within 30

days of receipt or notice of billing shall be presumed untimely.

Plaintiff contends that this statute requires a manufacturer/licensee to compensate dealers for warranty parts at a "retail rate."[4] Conversely, Defendant denies that it has any duty to reimburse Plaintiff at a retail rate for parts used in warranty repairs or service under the terms of Florida Statute § 320.696.

The parties agree that the statute clearly provides that Brandon, as dealer, is responsible for issuing a "notice of billing," and in response Chrysler is to reimburse Brandon within 30 days (D–17, pgs. 2, 9; D–22, pg. 15). Additionally, the parties do not dispute that Chrysler reimbursed Brandon for warranty parts in the amounts provided for in the parties' dealer agreements (D–17, pg. 2; D–22, pgs. 15–16 and Ex. 2, pg. 2). In a letter dated November 4, 1993, Brandon first asserted that Chrysler's reimbursement policy for parts was in violation of Florida law, and demanded payment at the retail price for warranty parts reimbursement (D–17, Ex. 3–A; D–22, Ex. 2). Chrysler disagreed with Brandon's position, and thereafter this action ensued.

Pursuant to its complaint, Brandon seeks two claims for relief: 1) damages for the difference between the actual reimbursements Chrysler has paid for warranty parts and Brandon's retail prices for an unspecified period in the past;[5] and 2) an injunction requiring Chrysler to pay its retail prices for

---

**2.** Under the reimbursement guidelines, each dealer is to be compensated at their wholesale cost, plus 30–40% above cost, depending on the vehicle model year. *See* excerpts of Manual (D–17, Ex. 2–A).

**3.** The foregoing portion of this statute was enacted in 1977, and amended to its present form in 1988, by adding the remaining portion of the statute.

**4.** This term refers to a rate not less than the amount charged by the dealer for like work to retail customers for nonwarranty repairs and service. *See Fla.Stat.* § 320.696 (1993); (D–2, ¶ 6).

**5.** Brandon also seeks treble damages for this differential amount plus costs and attorneys' fees

under *Fla.Stat.* § 320.697 (1993). That section provides as follows:

> Any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of §§ 320.60–320.70, notwithstanding the existence of any other remedies under §§ 320.60–320.70, has a cause of action against the licensee for damages and may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss, together with costs and a reasonable attorney's fee to be assessed by the court. Upon a prima facie showing by the person bringing the action that such a violation by the licensee has occurred, the burden of proof shall then be upon the licensee to prove that such violation or unfair practice did not occur.

warranty parts in the future [6] (D–2, ¶¶ 6–7, 9 and 12). Defendant now seeks summary judgment as a matter of law on both of Brandon's claims. Plaintiff, however, seeks partial summary judgment specifically as to whether § 320.696 of the Florida Statutes requires the manufacturer to compensate a dealer for parts used in warranty service at a rate not less than the amount charged by the dealer for like work to retail customers for nonwarranty work. The Defendant contends that § 320.696 does not require the manufacturer to reimburse the dealer for "parts" at a "retail rate."

The parties agree that this case presents one determinative issue regarding the interpretation of Florida Statute § 320.696 for warranty parts reimbursement (D–11, pg. 4–5; D–13, pg. 1; D–17, pg. 1). Specifically, that issue is whether Chrysler as a manufacturer/licensee is required to reimburse Brandon, a dealer, for parts used in warranty service at the retail rate charged by Brandon to nonwarranty customers. The parties further agree that the resolution of this issue is strictly a question of law involving statutory construction, and does not involve any genuine issues of material fact. *Id.* *See DeSisto College, Inc. v. Town Of Howey–In–The–Hills,* 706 F.Supp. 1479, 1495 (M.D.Fla.1989), *aff'd,* 888 F.2d 766 (11th Cir.1989), (citing *Devin v. Hollywood,* 351 So.2d 1022, 1026 (Fla. 4th DCA 1976) (statutory construction is a question of law to be decided by the court)).[7]

### STATUTORY CONSTRUCTION

■ When interpreting a statute, a court must start with the language of the statute itself. *Carpenters Dist. Council of*

*New Orleans & Vicinity v. Dillard Dep't Stores, Inc.,* 15 F.3d 1275, 1282 (11th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 933, 130 L.Ed.2d 879 (1995); *St. Petersburg Bank & Trust, Co. v. Hamm,* 414 So.2d 1071, 1073 (Fla.1982). If statutory language is clear and unambiguous, the court may end its inquiry. *Carpenters,* 15 F.3d at 1282–83; *Forsythe v. Longboat Key Beach Erosion Control Dist.,* 604 So.2d 452, 454 (Fla.1992). Only when the statute has more than one reasonable interpretation should the court look beyond the language itself. *Carpenters* 15 F.3d at 1283. Thus, a court may depart from the statute to seek extrinsic aid when the language is unclear, or if the apparent clarity leads to an absurd result. *Blue Cross & Blue Shield of Ala. v. Weitz,* 913 F.2d 1544, 1548 (11th Cir.1990); *Weber v. Dobbins,* 616 So.2d 956, 958 (Fla.1993); *Holly v. Auld,* 450 So.2d 217, 219 (Fla.1984).

■ In the instant case, the Plaintiff claims that the language of Florida Statute § 320.696 is clear and that the statute on its face requires retail compensation to dealers for warranty parts. Plaintiff asserts that the key phrase in the statute is the obligation of the manufacturer to compensate the dealer "for work by a motor vehicle dealer for warranty repairs or service on behalf of a licensee." *See* (D–11, pg. 7). Plaintiff argues that the disjunctive phrase "repairs or service" requires compensation for both forms of work. In particular, "repair" consists of both labor and parts.[8] Relying on the definition of "repair," Plaintiff claims that in order to restore an automobile to its original state, one must employ **both** parts and labor. Furthermore, Plaintiff contends that the legisla-

---

6. Plaintiff seeks this injunction pursuant to *Fla. Stat.* § 320.695 (1993). That section provides in relevant part:

> In addition to the remedies provided in this chapter, and notwithstanding the existence of any adequate remedy at law, the department or any motor vehicle dealer ... is authorized to make application to any circuit court of the state for the grant ... of a temporary or permanent injunction, or both, ... from violating or continuing to violate any of the provisions of 320.60–320.70, or from failing or refusing to comply with the requirements of this law or any rule or regulation adopted hereunder. ...

7. *Accord Birnholz v. 44 Wall Street Fund Inc.,* 880 F.2d 335, 341 n. 8 (11th Cir.1989).

8. "Repair" as defined by Black's Law Dictionary provides:

> To mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction. *Black's Law Dictionary* 900 (6th ed. 1991).

Plaintiff also relies on *Queen Ins. Co. v. Dominguez,* 426 S.W.2d 286, 289 (Tex.Civ.App.1968), which states that the definition of "repair" in the context of automobiles is the "restoration of the automobile to substantially the same condition in which it was. ..."

tive intent to compensate for parts at a "retail rate" is clearly set forth in the statute's definition of "reasonable compensation." This definition provides that compensation "shall not be determined to be less than the amount charged by a dealer for like work to retail customers for nonwarranty repairs and service...." *Fla.Stat.* § 320.696 (1993).

In contrast to Plaintiff's focus on the word "repairs," Defendant argues that the statute speaks entirely in terms of "work" performed by the dealer, the prevailing "wage" rate paid by the dealer, and its retail charges for "labor." Furthermore, Defendant contends that the statute on its face does not make any reference to any obligation to reimburse a dealer for "parts," much less parts at a "retail rate." Defendant asserts that "work," as defined in Black's Law Dictionary,[9] case law, and other statutory contexts, is explained in terms of physical acts, not materials, and equates "work" with "labor." Thus, Defendant contends that "work" can only mean "labor" in the context of Florida Statute § 320.696.[10] Moreover, Defendant asserts that if the Florida legislature intended for a dealer to be reimbursed for warranty "parts" at a retail rate, it would have specifically used the word "parts" as it did in § 320.63(5) of the Florida Statutes. *Fla. Stat.* § 320.63(5) (1993).

■■■ Upon the Court's analysis of § 320.696 and the parties' different interpretations of the statute, the Court finds that the statutory language is ambiguous. It is unclear whether the statute provides for reimbursement for warranty parts, in particular whether the terms "work," or "repairs" include "parts." In an attempt to ascertain the legislature's intent in drafting the statute, the Court begins with basic tenets of

statutory construction. The Court must assume that the legislature intended the ordinary meaning of the words it used and absent clearly expressed legislative intent to the contrary, the plain and unambiguous language of statute must prevail. *Blue Cross & Blue Shield,* 913 F.2d at 1548; *Weber,* 616 So.2d at 958. Furthermore, where possible, a court must give full effect to all statutory provisions, so that no part is inoperative, insignificant or superfluous, and construe related statutory provisions in harmony with one another. *Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir.1993); *Forsythe,* 604 So.2d at 455. The meaning of the statute is determined by ascertaining the legislature's intent, and the words used in the statute must be construed in context and considered as a whole in light of the general purpose the statute seeks to accomplish. *Mike Smith Pontiac v. Mercedes–Benz of N. Am.,* 32 F.3d 528, 534 (11th Cir.1994); *Forsythe,* 604 So.2d at 455.

Looking at the statute on its face, the Defendant is correct in its assertion that nowhere in the statute does it mention any obligation on the manufacturer to reimburse the dealer for "parts" at a "retail rate." The word "part" is not used at all in § 320.696. Rather, the statute provides that a manufacturer must compensate a dealer for "work" as to warranty obligations. Section 320.696 further states that "reasonable compensation" shall be paid to the dealer for "warranty repairs or service," and shall not be "less than the amount charged by the dealer for like work to retail customers for nonwarranty repairs or service". (emphasis added). Adhering to the statutory rule of construction in which the Court must assume that the legislature intended the ordinary meaning of

---

9. Black's Law Dictionary defines "work" as:

To **exert** one's self for a purpose; to put forth effort for the attainment of an object; to be engaged in the **performance** of a task, duty, or the like. The term covers **all forms of physical or mental exertions,** or both combined, for the attainment of some object other than recreation or amusement. *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, Ala.,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). See also **Labor.**

*Black's Law Dictionary* 1439 (5th ed. 1979) (emphasis added).

10. Plaintiff contends that the Defendant's focus on the word "work" is too narrow, and therefore misconstrues its use in the context of § 320.696. Based on the Defendant's interpretation of "work," the Plaintiff asserts that Chrysler has ignored one of the basic rules of statutory construction that words take their meaning based on their context or association with other words in the statute. *See Mike Smith Pontiac v. Mercedes–Benz of N. Am.,* 32 F.3d 528, 534 (11th Cir.1994); *DeSisto College,* 706 F.Supp. at 1495.

the words it used,[11] this Court cannot find that "work" or "repairs or service" includes "parts.". To assume other than the ordinary meaning of these words, there must be a clearly expressed legislative intent to that effect. *See Gonzalez,* 980 F.2d at 1420. The Plaintiff has not set forth any such legislative intent, nor is this Court aware of any.

■ The Court further agrees with Defendant's assertion that if the legislature intended to include "parts" in the scope of § 320.696, it would have specifically stated so. Courts should generally presume that the legislature acts intentionally and purposely when it includes particular language in one part of a statute, but omits it in another part. *BFP v. Resolution Trust Corp.,* — U.S. —, —, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556, 564 (1994). Furthermore, a statute should ordinarily be construed as excluding from its operation all things not expressly mentioned, especially where the statue enumerates specific things on which it operates. *DeSisto College,* 706 F.Supp. at 1495 (citing *Towerhouse Condominium, Inc. v. Millman,* 475 So.2d 674, 676 (Fla.1985); *Ideal Farms Drainage Dist. v. Certain Lands,* 154 Fla. 554, 19 So.2d 234, 239 (1944)). Moreover, a court may not supply words where the legislature excludes things by omission. *DeSisto College,* 706 F.Supp. at 1495 (citing *Brooks v. Anastasia Mosquito Control Dist.,* 148 So.2d 64, 66 (Fla. 1st DCA 1963)).

Adhering to these rules of statutory construction, this Court must assume that the legislature intended to provide reimbursement at a retail rate for labor, and not parts, given that "labor" was specifically enumerated in the statute and "parts" was not. *See*

*DeSisto,* 706 F.Supp. at 1495. Assuming also that the legislature acted intentionally and purposely when including the word "parts" in Florida Statute § 320.63(5), and omitting it in § 320.696,[12] the Court is not persuaded by the Plaintiff's argument that § 320.696 requires compensation for warranty parts at a retail rate based on the inclusion of the word "parts" in § 320.63(5). Specifically, Plaintiff argues that there could be no other reason for requiring the licensee to file of an affidavit stating the rates for dealer reimbursement of "parts and labor." Requiring a manufacturer/licensee to file an affidavit stating the rates it agrees to reimburse the dealer for warranty parts is not inconsistent with § 320.696 which simply requires reimbursement of labor at a retail rate. While § 320.63(5) implies a duty on the manufacturer to in fact reimburse a dealer for warranty parts, such reimbursement is provided for in the SSA between the parties, and this Court does not find that such practice violates § 320.696 on its face.[13]

■ Where, as in the instant case, the statute on its face is unclear or has more than one reasonable interpretation, the goal of statutory interpretation is to determine legislative intent.[14] *See DeSisto College,* 706 F.Supp. at 1495 (citing *Tyson v. Lanier,* 156 So.2d 833, 836 (Fla.1963)). The Court therefore must seek other extrinsic aids in interpreting the statute. *Blue Cross & Blue Shield,* 913 F.2d at 1548; *Weber,* 616 So.2d at 958. Because this case is one of first impression in Florida, the Court now looks to other jurisdictions as to their interpretation and wording of similar statutes dealing with warranty reimbursement policies.

---

11. *See Gonzalez,* 980 F.2d at 1420; *Blue Cross & Blue Shield,* 913 F.2d at 1548.

12. *See BFP,* — U.S. at —, 114 S.Ct. at 1761, 128 L.Ed.2d at 564.

13. The Court notes that because this Court does not find that the Defendant must reimburse the Plaintiff for warranty parts at a retail rate, the Defendants are not therefore in violation of sections 320.63(3) and 320.64(19) of the Florida Statutes. *See Fla.Stat.* § 320.63(3) (1993) (requiring the franchise agreement to provide that all terms and conditions of the contract inconsis-

tent with the State's rules have no force); *Fla. Stat.* § 320.64(19) (1993) (denies, suspends, or revokes manufacturer's license if any contractual provisions are contrary to §§ 320.60–320.70).

14. Notably, the Court has attempted to review the legislative history of § 320.696 by investigating the legislative committee's documentation in drafting the statute. The documentation that was available on § 320.696 with the Florida State Archives is deficient in any relevant information useful in resolving the issue before the Court.

Two other federal courts have addressed similar statutory damage claims for past warranty parts reimbursement. *See Acadia Motors, Inc. v. Ford Motor Co.*, 844 F.Supp. 819 (D.Me.1994), *modified*, 44 F.3d 1050 (1st Cir. 1995); *Kronon Motor Sales, Inc. v. Ford Motor Co.*, 41 F.3d 338 (7th Cir.1994). In *Kronon*, the Court specifically addressed whether the Illinois warranty reimbursement statute provided for "parts" reimbursement at a retail rate, and not just "labor." *Id.* at 339. The statute in *Kronon* provided:

> The Act [15] requires the manufacturer to 'adequately and fairly compensate each of its motor vehicle dealers for labor and parts.' 815 ILCS 710/6(a). 'In the determination of what constitutes reasonable compensation ..., the principal factor to be given consideration shall be the prevailing wage rates being paid by the dealers in the relevant market area in which the motor vehicle dealer is doing business, and in no event shall such compensation of a motor vehicle dealer for warranty service be less than the rates charged by such dealer for like service to retail customers of nonwarranty service and repairs.' 85 ILCS 710/6(b). [16]

*Id.* Like Brandon, the plaintiff in *Kronon* argued that the dealer is entitled to be reimbursed for "parts" sold under warranty at the same rate as it charges its nonwarranty customers. *Id.* The *Kronon* court held that the statute does not require the manufacturer to reimburse the dealer for warranty parts at a retail rate. *Id.* at 341. The court further commented that, "[i]f dealers want broader protection against the manufacturers, they must seek it from the legislature." *Id.*

Notably, Florida Statute § 320.696, very closely parallels the Illinois statute. The one significant difference between the two statutes, is that the Illinois statute specifically requires adequate and fair compensation for "labor and parts." *See* 815 ILCS 710/6(a). Whereas, Florida Statute § 320.696 requires

"reasonable compensation" for "work," including "warranty repairs or service." [17] Thereafter, both statutes go on to define "reasonable compensation" in strikingly similar language both concluding with the same standard that such compensation shall not be less than the rates or amounts charged by the dealer for like service/work to retail customers for nonwarranty service and repairs.

Moreover, even in the Illinois statute which specifically mentions compensation for "parts," the *Kronon* court concluded that it did not specifically mention "parts" when addressing reimbursement at a retail rate, as in Florida Statute § 320.696. *See Kronon*, 41 F.3d at 339. The *Kronon* court further explained that its interpretation of the statute was not surprising in light of the prevailing "wage rate" factor considered in determining reasonable compensation. *Id.* The court commented that "wage rates" is a consideration "only in the labor component of warranty work." *Id.* (emphasis added). Furthermore, "[i]t does not enter at all into the price of a part." *Id.*

Furthermore, the *Kronon* court provided a rationale for the reimbursement of labor at a retail rate, and not parts, stating:

> Manufacturers must not have been reimbursing the dealers' labor costs at the wage rates prevailing in the dealers' markets, and this must have put the dealers in a bind, as they had to pay those rates to get competent workers to do warranty work. So the amendment was passed, commanding the manufacturers to reimburse the dealers at the prevailing market wage rates and, to make assurance doubly sure, entitling the dealers to reimbursement from the manufacturers at whatever rates the dealer were charging their paying customers. There is no indication that the legislature intended to do anything about parts reimbursement. There is, as we have pointed out, no reference to parts. Had the legislature intended to establish a

---

**15.** The "Act" refers to the Illinois Motor Vehicle Franchise Act.

**16.** The Court notes that § 6(b) of this statute was added by amendment in 1983, four years after § 6(a). *See Kronon*, 41 F.3d at 340.

**17.** *See Fla.Stat.* § 320.696, *supra* at 860.

rule of parity for parts as well as labor, it could have said so very simply; there would have been no occasion even to mention wage rates;

*Id.* at 340.[18] Based on the strikingly similar language of Florida Statute § 320.696 to the Illinois warranty reimbursement statute, this Court adopts *Kronon's* rationale.

Like *Kronon,* the court in *Acadia* also addressed a warranty reimbursement statute, but in a slightly different context. In *Acadia,* the main issue in the case was whether Maine's warranty reimbursement statute prohibited the manufacturer from increasing vehicle prices in order to recover its compliance costs under the statute as well as instituting a surcharge to recover the costs of warranty repair.[19] 44 F.3d at 1055–56. In addressing this issue, the district court analyzed Maine's warranty reimbursement statute, 10 M.R.S.A. § 1176 (Supp.1993). 844 F.Supp. at 829. The district court found that the Maine statute specifically required the manufacturer to pay dealers the same rate that the dealer would have charged nonwarranty customers for parts.[20] *Id.*

Yet, Plaintiff argues, "the fact that the Maine statute was found to require such compensation is the foundation of the decision. Similarly, Florida's Statute requires reimbursement for parts used by a dealer in warranty repair to be made at retail." (D–11, pg. 16). The Court finds that Plaintiff's reliance on *Acadia* is misplaced. The Maine statute at issue in *Acadia* specifically stated that the manufacturer "shall reimburse the franchisee for any parts at the retail rate customarily charged by that franchise for the same parts when not provided in satisfaction of a warranty." *Acadia,* 44 F.3d at 1052 (citing 10 M.R.S.A. § 1176 (1991) (Me.Rev. Stat.Ann. tit. 10, § 1176 (West Supp.1994)) (emphasis added)). Unlike the Maine statute, Florida Statute § 320.696 does not expressly state reimbursement for "parts" at a retail rate. Thus, there is no ambiguity on the face of the Maine statute with regard to warranty parts reimbursement as there is in the Florida statute.

---

18. Moreover, the *Kronon* court further noted that there is a significant difference between the two types of warranty work, labor and parts, thus, warranting "retail rate" reimbursement for labor. Specifically, the court stated:

> The basic formula for reimbursement of the pure service (labor) component is an hourly wage rate times the number of hours the repair or other servicing in question is estimated to take. If the estimate is accurate on average this formula amounts to a pure dealer cost pass-through, with no allowance for profit to cover the fixed expenses of the dealership. If the manufacturer pays a lower hourly rate than the rate that the dealer must pay to hire workers to perform warranty service, that service will be provided at an out-of-pocket loss to the dealer. It is apparently to this acute danger that the Illinois legislature reacted in the 1983 amendment.

*Id.* at 340.

Notably, the district court in *Acadia,* offered an another rationale for requiring reimbursement of **labor** at a retail rate. 44 F.3d at 1056. Relying on the legislative history of Maine's warranty reimbursement statute, the *Acadia* court quoted the legislature's reasoning for amending the statute to require labor reimbursement at a retail rate stating:

> With the superior bargaining position, automakers have in the past forced dealers to accept reimbursement at a rate substantially lower than the dealers' usual retail rate. The net effect has been that, through an inflated **labor**

rate, non-warranty **customers** have subsidized automakers who were unwilling to pay the fair and full price for repairs made necessary when their automobiles failed to meet warranty standards. **This section prevents recurrence of this problem** . . . .

*Id.* (quoting Me.L.D.1878, 109th Leg., 2d Sess. (1980) (Statement of Fact) (emphasis in the original)).

19. The appellate court in *Acadia* agreed with the district court finding that the Maine statute did not prohibit the manufacturer from recovering compliance costs under the statute. *Acadia,* 44 F.3d at 1056. Yet, the district court found that such cost recovery could not be through a warranty surcharge, but that the manufacturers could recoup their costs by increasing the vehicle sticker prices. *Acadia,* 844 F.Supp. at 830. The appellate court found, however, that Maine's warranty reimbursement statute did not limit or condition the manufacturer's cost recovery. *Acadia,* 44 F.3d at 1056. Unlike the district court, the appellate court held that the manufacturer could recoup their compliance costs by either increasing the vehicle sticker price or by imposing a warranty surcharge. *Acadia,* 44 F.3d at 1056–57.

20. The appellate court similarly confirmed the district court's interpretation of the Maine statute requiring reimbursement for warranty parts at a retail rate. 44 F.3d at 1056.

Plaintiff also cites *Northwood AMC Corp. v. Am. Motors Corp.*, 139 Vt. 145, 423 A.2d 846 (1980), as another case in which the warranty reimbursement statute in issue required compensation for warranty parts at a retail rate. In *Northwood*, the court addressed whether an amendment to Vermont's warranty reimbursement statute, 9 V.S.A. § 4076, could be applied retroactively. *Id.* 423 A.2d at 848. The *Northwood* court held that the statutory amendment did not retroactively apply to effect the rights and liabilities of the parties. *Id.* 423 A.2d at 849.

At the time of the parties' franchise agreement in *Northwood*, the Vermont warranty reimbursement statute provided that manufacturers were to compensate dealers "adequately and fairly" for warranty work. *Id.* 423 A.2d at 848. Subsequent to the parties' agreement, the Vermont statute was amended to provide that "adequate and fair compensation" for warranty work "shall mean that the motor vehicle dealer who performs such warranty **work** shall be compensated and paid for said **work** in an amount not less than the charge made by the dealer for non-warranty work." *Id.* (quoting 9 V.S.A. § 4076) (emphasis added). The parties' agreement provided that "parts" were to be reimbursed at cost plus 30%. *Northwood*, 423 A.2d at 848.

Based on *Northwood*, Plaintiff argues that implicit in the court's decision is "the notion that the language of that statute (specifically the term work) required compensation for both parts and labor." (D–11, pg. 17). The Court finds that the Plaintiff has misconstrued the court's decision. While the Florida statute, like the Vermont statute, speaks in terms of "warranty work," based on the court's holding in *Northwood*, the amendment to the statute requiring warranty part reimbursement at a retail rate did not even apply in that case. Rather, reimbursement for parts was according to the parties' agreement. *See Northwood*, 423 A.2d at 848. Thus, the *Northwood* court never even addressed whether the term "warranty work" included reimbursement for "parts and labor."[21] The Court thus finds the *Northwood* case unpersuasive.

Notably, the legislatures of other states which have warranty reimbursement statutes in place, provide another source of comparison and instruction for this Court in construing Florida Statute § 320.696. The Plaintiff references Alabama's warranty reimbursement statute, *Ala. Code* § 8–20–7 (1993), as a similar statute in content to Florida's statute. Plaintiff asserts that because Alabama specifically uses the word "parts" in its definition of reasonable compensation, "it is apparent that the inclusion of parts in Florida was well within the intent of the legislature." (D–11, pg. 18). The Court is not persuaded by this argument.

At least twenty-five states other than Florida have similar automobile warranty compensation statutes. Typically, where a state legislature intended to require reimbursement for warranty parts, the word "parts" was specifically used in the statute. For instance, like Florida, five of these states have a statute which specifically requires the filing of a schedule of compensation inclusive of parts, or simply mandates reimbursement for parts in one provision of the statute, but in another provision clearly delineates the reimbursement of "labor" at a retail rate. *See Del. Code Ann.* tit. 6, § 4903 (1994); *Miss. Code Ann.* § 63–17–85 (1993); *Mich. Comp. Laws Ann.* § 445.1577 (West 1995); 63 *Pa. Cons. Stat. Ann.* § 818.8(a) (1994); *Wyo. Stat.* § 31–16–117 (1994).

Sixteen other state statutes specifically provide that "parts" will be reimbursed at a retail rate, as well as labor. *See Ala. Code*, § 8–20–7 (1994); *Ga. Code Ann.* § 10–1–641 (Michie 1994); *Me. Rev. Stat. Ann.* tit. 10, § 1176 (West Supp.1995); *Minn. Stat.* § 80E.04 (1995); *Mont. Code Ann.* § 61–4–204 (1993 & Supp.1994); *N.C. Gen. Stat.* § 20–305.1 (1994); *N.J. Stat. Ann.* § 56:10–15(a) (West 1994–95); *Nev. Rev. Stat. Ann.* § 482.36385 (Michie 1994); *N.Y. Veh. & Traf. Law* § 465 (Consol.Supp.1994); *Ohio Rev.*

---

**21.** Relying on *Northwood*, Plaintiff states in its Motion For Partial Summary Judgment that "[f]rom that statute a manufacturer was and is required to compensate its dealer for parts used in warranty work, repair, or service at retail" (D–11, pg. 17) (emphasis added). The Court notes that the *Northwood* court never made such a finding.

Code Ann. § 4517.52 (Baldwin 1995); *Okla. Stat.Ann.* tit. 47, § 565 (West 1995); *Or.Rev. Stat.* § 650.158 (1993); *R.I.Gen.Laws* § 6A–2–329 (1994); *Va.Code Ann.* § 46.2–1571 (Michie 1994); *Vt.Stat.Ann.* tit. 9, § 4086 (1994); *Wash.Rev.Code* § 46.94.040 (1994).[22] The existence of these statutes with specific provisions for compensation of "parts" at a retail rate makes it appear less likely to this Court that the Florida legislature omitted mention of "parts" simply because everyone would assume that "service," "repair," or "work" included parts. Obviously, the other states did not make such an assumption in that they expressly provided for "parts." Likewise, this Court will not make such an assumption.

Lastly, Plaintiff argues that even if the Court finds § 320.696 to be ambiguous, such ambiguity should be exercised in favor of the dealer, for whom the statute was designed to protect. While the Court acknowledges that the Dealer Act was enacted, in part, to "redress the economic imbalance which naturally exists between national manufacturers and local dealers,"[23] such policy is not determinative. Additionally, the Dealer Act was enacted to "ensure fair dealing at **all** levels among **all participants** in the distribution and sale of motor vehicles." *Mike Smith Pontiac*, 32 F.3d at 533. Moreover, the express purpose of the Dealer Act is to "protect the public health, safety, and welfare ... by regulating the licensing of ... dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as ... dealers." *Id.* (quoting *Fla. Stat.* § 320.605). Balancing all of these considerations as well as the statutory rules of construction, the Court cannot find that any ambiguity in the statute must be resolved in favor of the Plaintiff simply because of the disparity in bargaining power between manufacturers and dealers.

If dealers want broader protection from the manufacturers, they must seek it from the legislature. This Court will not infer legislative intent or policy, nor will it venture into the domain of the legislature. By finding in favor of the Plaintiff, the Court would be overstepping its bounds of authority.

### CONCLUSION

Having ruled on the statutory interpretation of Florida Statute § 320.696 and finding that the Plaintiff is not entitled to reimbursement for warranty parts at a retail rate, this Court need not reach the Defendant's other grounds for its dispositive motion for summary judgment. Thus, based on the Court's findings as to § 320.696, the Defendant's arguments that the Plaintiff has failed to preserve its right to compensation under the statute for past reimbursement, as well as Plaintiff's relinquishment of rights based on accord and satisfaction are moot.

Furthermore, in accordance with the foregoing findings, Plaintiff's action for damages for past warranty parts reimbursement at a retail rate, treble damages, and injunctive relief are hereby dismissed.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

(1) The Plaintiff's Motion for Partial Summary Judgment (D–11) is **DENIED.**

(2) The Defendant's Motion for Summary Judgment (D–16) is **GRANTED.** The Clerk is directed to CLOSE this case.

DONE AND ORDERED.

---

**22.** Unlike the other states, Tennessee's warranty reimbursement statute speaks solely in terms of "labor" at a retail rate, with no mention of "parts." *See Tenn.Code Ann.* § 55–17–121 (1994). Furthermore, the warranty reimbursement statutes for New Hampshire, Texas and West Virginia appeared to be ambiguous on their face and thus, were not relied upon by the Court.

*See N.H.Rev.Stat.Ann.* § 357–C:5 (1984 & Supp. 1993); *Tex.Rev.Civ.Stat.Ann.* 4413(36) § 5.02 (West Supp.1994); *W.Va.Code* § 17A–6A–8a (1995).

**23.** *See Mike Smith Pontiac,* 32 F.3d at 533.