The QUEEN INSURANCE COMPANY,
Appellant,

v.

Olga DOMINGUEZ et al., Appellees.

No. 14650.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 15, 1968.

Rehearing Denied April 3, 1968.

---

1. Appellate Procedure in Texas, § 12.10(3); McDonald, Texas Civil Practice, § 18.05.

Tom H. King, Arch B. Haston, San Antonio, for appellant.

Putman & Putman, Richard G. Strong, Groce, Hebdon, Fahey & Smith, San Antonio, for appellee.

KLINGEMAN, Justice.

On November 5, 1965, Olga Dominguez, hereinafter called "Miss Dominguez," left her 1965 Pontiac LeMans automobile with Superior Pontiac Company, hereinafter called "Superior," for minor repairs. Such automobile had been purchased from Superior by Miss Dominguez in July, 1965, for a purchase price of $3,175.92, and had been driven approximately 6,800 miles. While such automobile was in Superior's possession, it was stolen from Superior's parking lot, wrecked in New Braunfels, Texas, and subsequently returned to Superior. Said automobile is still in possession of Superior. Appellant, The Queen Insurance Company of America, hereinafter called "Queen," had issued a policy of insurance to Miss Dominguez, with loss

payable clause to Alamo National Bank, hereinafter called "Alamo," insuring against loss of the automobile by theft, collision, and other coverage. After the wreck, Queen had an appraisal made by an automobile damage appraisal firm and offered to pay Miss Dominguez the amount shown by such appraisal as needed to repair her Pontiac. Some repairs were made to the automobile by Superior, although there is no evidence in the record as to who ordered such repairs. Miss Dominguez was not satisfied with the repairs or the condition of the automobile after those repairs were made, and filed suit against Queen alleging that the automobile could not be repaired to its former condition and was worthless. She sought recovery for $3,200.00, alleged to be the cash value of the automobile immediately prior to the theft. Queen brought in Superior as a third party defendant, asking recovery over against Superior for any amount for which Queen was held liable under subrogation, alleging negligence against Superior in connection with the theft. Queen also brought in Alamo for the purpose of adjudicating its rights to any proceeds payable under the policy. After a trial to a jury, the court entered judgment for Miss Dominguez and Alamo against Queen in the amount of $2,875.00, decreed that Queen take nothing as against Superior, and awarded Queen all right, title and interest of Miss Dominguez and Alamo in and to said automobile upon payment of said sum of $2,875.00.

The jury found that the value of the automobile before it was stolen was $2,875.00; that after recovery but before any repairs had been made the value was $750.00; that after the repairs the value was $1,900.00; that the reasonable cost of labor and material required to restore such automobile to substantially its former condition prior to its having been stolen was $1,850.00. The jury also found that Superior was not negligent in the loss of the automobile, and that Miss Dominguez did not authorize Superior to make repairs on her automobile.

The policy of insurance, among other things, contained the following provisions:

"LIMIT OF LIABILITY. The limit of the company's liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at time of loss, not what it would then cost to repair or replace the property or such part thereof with other of like kind and quality, * * *."

"PAYMENT OF LOSS—Part III. The company may pay for the loss in money; or may repair or replace the damaged or stolen property; or may, at any time before the loss is paid or the property is so replaced, at its expense return any stolen property to the named insured, or at its option to the address shown in the declarations, with payment for any resultant damage thereto; or may take all or such part of the property at the agreed or appraised value but there shall be no abandonment to the company."

Queen's primary contention on this appeal is that the trial court erred in rendering judgment for the value of the automobile.

After a careful consideration of the entire record, we have concluded that the jury's verdict does not support the judgment rendered against Queen in the amount of $2,875.00.

If there has been a total loss of the automobile, the measure of damages is the reasonable cash market value of the car immediately before the theft. Stuyvesant Ins. Co. v. Driskill, 244 S.W.2d 291 (Tex. Civ.App.—Fort Worth 1951, no writ); Firemen's Ins. Co. of Newark, N. J. v. Universal Credit Co., 85 S.W.2d 1061 (Tex. Civ.App.—Eastland 1935, no writ); Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 6, Perm.Ed., § 3792, p. 472; 17 Tex.Jur.2d Damages, § 93. There is no finding in this case that the automobile was

a total loss. There is a jury finding that the reasonable cash market value of the car after it had been damaged but before any repairs were made to it was $750.00, and there was testimony that such value was $1,500.00. Generally, the measure of damages for injury to a vehicle is established by proof of the market value immediately before the injury and the market value immediately after. Wilson v. Metcalf, 257 S.W.2d 855 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.); 17 Tex. Jur.2d, Damages, § 92.

■ Appellees assert that under the holding in the *Stuyvesant* case, supra, the judgment of the trial court should be affirmed. That case was a suit for damages to a car which was wrecked after having been stolen from a parking lot, under a policy of insurance which contained almost identical provisions as involved in our case which are hereinabove set forth. In that case the trial court entered judgment for the actual cash market value of the automobile immediately prior to the theft, which holding was affirmed by the Fort Worth Court of Civil Appeals. Such case is distinguishable from the case before us in that there were findings by the trial court that (a) the car owner had at all times been ready and willing, and had offered, to accept delivery of the car in its repaired condition and give credit to the insurance company on his claim, but the insurance company had refused delivery of possession; (b) although some repairs had been made, more repairs were necessary to put the car in salable condition, and when such repairs were made, they would not substantially restore the automobile to its prior condition; (c) that the insurance company did not exercise its option to replace or repair and deliver the automobile to the owner. We have no comparable findings in this case, and there is no evidence that Queen has refused delivery of the automobile to Miss Dominguez, or any finding to this effect. There is no basis in any of the jury findings for a judgment for the amount of $2,875.00.

■ Queen asserts that under the policy provisions this Court should reverse and render the judgment because such policy gave Queen certain options, one of which was to pay the costs of repairs; that this option was exercised by Queen, and the only evidence with regard to the cost of repairs was an estimate made by Fisher Auto Damages Appraisers in the amount of $924.20; and that this Court should render judgment holding Queen liable in this amount. The words "repair" and "replace" in a policy mean the restoration of the automobile to substantially the same condition in which it was immediately prior to the collision, and it would not be restored to such condition if the repairs left the market value of the automobile substantially less than the value immediately before the collision. American Standard County Mut. Ins. Co. v. Barbee, 262 S.W.2d 122 (Tex. Civ.App.—Fort Worth 1953, no writ); Smith v. American Fire & Casualty Co., 242 S.W.2d 448 (Tex.Civ.App.—Beaumont 1951, no writ). Where the repairs do not substantially restore the automobile to its former condition, the cost of repairs is not the proper measure of damages. American Standard County Mut. Ins. Co. v. Barbee, supra; Bankers & Shippers Ins. Co. v. Ellis Green Motor Co., 102 S.W.2d 294 (Tex.Civ.App.—El Paso 1937, writ dism'd); Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 6, Perm.Ed. § 3792, p. 473.

While there is evidence that such automobile was restored to substantially the same condition, there is also evidence to the contrary, including evidence that the car had been substantially damaged in the wreck, with damage to the frame, body, fenders, wheels, doors, gas tank and other items, and that after the repairs had been made the car didn't look nice; the fender and door were wavy, the door was not properly aligned, the paint didn't match; it looked like it had been thrown together. There is testimony by a used car salesman that after a car has been wrecked as this car had, it is hard to sell. The jury, after

hearing all of the testimony, found that after the repairs had been made the automobile had a value of $1,900.00, or $975.00 less than its value before the theft. The jury also found that the reasonable cost of labor and material to restore the automobile to substantially the same condition as it was immediately prior to its having been stolen was $1,850.00. There is no basis under the jury findings for this Court to render judgment holding Queen liable in the amount of $924.20, as requested by Queen.

We do not see how it is possible for this Court, under the pleadings, the evidence and the jury findings, to render a judgment of any kind in this case. Although the jury found that the cost of restoring the automobile to substantially the same condition as it was before the wreck to be $1,850.00, even under such finding, in order for Miss Dominguez to be placed in the same position as before the theft, possession of the automobile would have to be awarded to her, but in her suit Miss Dominguez does not ask for restoration of her automobile. Queen, by trial amendment, asked that if the court found that the car was not a total loss but had been properly repaired or was repairable, that Superior should be ordered to deliver possession of such automobile to Miss Dominguez, but that if the court found that the automobile was a total loss that Superior should be required to deliver possession of such car to Queen. There is testimony in the record that Superior would not deliver possession of such car until the amount of its repair charges were paid, and wrote Miss Dominguez stating that it was holding her car for $924.20 repair damages, interest and storage charges. There are matters which were raised by the pleadings and evidence in this case that were not determined by the jury's findings and the judgment. Under the record before us, it is necessary that this case be remanded for a new trial and, accordingly, the judgment of the trial court is reversed and the cause remanded.