AMERICAN MANUFACTURERS
MUTUAL INSURANCE
COMPANY, et al.

v.

Gary SCHAEFER, Individually and as
Representative of All Persons
Similarly Situated.

No. 02–0295.

Supreme Court of Texas.

Argued Feb. 19, 2003.

Decided Oct. 17, 2003.

Heather Donise Bailey, Haynes & Boone, LLP, Dallas, Amicus Curiae for Heather McDaniel Bailey.

Sean D. Jordan, Jackson Walker, LLP, Austin, Amicus Curiae for Mid–Century Insurance Company.

Roger Higgins, Thompson Coe Cousins and Irons, Dallas, Amicus Curiae for National Association of Independent.

Larry F. York, York Keller & Field, LLP, Austin, Amicus Curiae for State Farm Mutual Automobile.

Scott K. Field, York Keller & Field, Austin, Amicus Curiae for State Farm Mutual Automobile I.

Jo Beth Eubanks, Pamela G. Matthews, Akin Gump Strauss Hauer & Feld, San Antonio, for Petitioner American Manufacturers Mutual Insurance Co.

David A. Jones, Akin Gump Strauss Hauer & Feld, San Antonio, for Petitioners American Motorists Insurance and American Protection Insurance.

Barry A. Chasnoff, Akin Gump Strauss Hauer & Feld, San Antonio, for Petitioner Kemper National Insurance Co.

David Roy Nelson, Akin Gump Strauss Hauer & Feld, San Antonio, for Petitioner Lumbermen's Mutual Casualty.

Christopher A. Kesler, Bruce B. Kemp, Kemp & Kesler, L.L.P., Sylvia Davidow, George M. Fleming, D'Lisa R. Simmons, Scott Anthony Love, Anita F. Kawaja,

Fleming & Associates, L.L.P., T. Gerald Treece, South Texas College of Law, Michael O'Brien, Houston, for Gary Schaefer.

Justice O'NEILL delivered the opinion of the Court.

In this case, we must decide whether the Texas Standard Personal Auto Policy obligates an insurer to compensate a policyholder for a vehicle's diminished market value when the car has been damaged but adequately repaired. We hold that it does not, and accordingly reverse the court of appeals' judgment.

## I

Gary Schaefer purchased a standard automobile insurance policy[1] from American Manufacturers Mutual Insurance Company (AMM). Part D of the policy, entitled "Coverage for Damage to Your Auto," provides that AMM will pay for "direct and accidental loss to your covered auto . . . ." The payment obligation is subject to a contractual limitation of liability that reads, in pertinent part, as follows:

**LIMIT OF LIABILITY**

Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other of like kind and quality; or

3. Amount stated in the Declarations of this policy.

The policy also provides for the method of paying the loss:

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property.

In October 1995, Schaefer's vehicle was involved in an accident. It was inspected by an AMM adjuster, and the insurance company elected to repair the vehicle. Schaefer does not dispute the quality or adequacy of the repairs. Instead, he maintains that its value decreased $2,600 due to market perceptions that a damaged and subsequently repaired vehicle is worth less than one that has never been damaged. Schaefer claims that the policy obligates AMM to compensate him for that diminished value.

Schaefer filed this class action against AMM and several other insurance companies that issue policies containing the same standard language.[2] He claims that AMM's refusal to compensate him for his vehicle's diminished market value violated the Texas Insurance Code and breached the insurance contract. Before any class was certified, Schaefer filed a motion for partial summary judgment arguing that AMM was liable for his vehicle's diminished value as a matter of law. AMM responded and filed a cross-motion for summary judgment on the same issue. The trial court granted AMM's motion and denied Schaefer's.

The court of appeals reversed the trial court's summary judgment in AMM's fa-

---

1. The Legislature requires the State Board of Insurance to promulgate standard and uniform insurance policies for those who write insurance in Texas for private passenger automobiles. *See* TEX. INS. CODE ANN. art. 5.06(1). The State Board of Insurance is now known as the Texas Department of Insurance, which is composed of the Commissioner of Insurance and other officers and employees. *See* TEX. INS. CODE ANN. arts. 31.003, 31.007.

2. Schaefer also sued Kemper National Insurance Companies, Lumbermen's Mutual Casualty Company, American Motorists Insurance Company, and American Protection Insurance Company. All claims against these companies were dismissed and they are not parties to this appeal.

vor, holding that Schaefer could seek diminished-value damages under the policy and that the jury should determine if the repairs did or could restore the vehicle to "substantially the same condition and value" it had prior to the accident. 65 S.W.3d 806, 810. The court expressly declined to follow a recent decision from the Fourteenth Court of Appeals, *Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), which held that the same policy language did not obligate an insurer to pay diminished-value damages for a vehicle that was adequately repaired. Two other courts of appeals have also declined to follow *Carlton*. *See State & County Mut. Fire Ins. Co. v. Macias*, 83 S.W.3d 304 (Tex.App.—Corpus Christi 2002, pet. filed); *Bailey v. Progressive County Mut. Ins. Co.*, 78 S.W.3d 708 (Tex.App.—Dallas 2002, pet. filed). Courts in other states have similarly split over this issue. We granted AMM's petition to resolve the conflict among our courts of appeals.

## II

■ We interpret insurance policies in Texas according to the rules of contract construction. *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999); *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law. *See Kelley–Coppedge*, 980 S.W.2d at 464 (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995)); *cf. Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Whether a contract is ambiguous is itself a question of law. *Kelley–Coppedge*, 980 S.W.2d at 464. An ambiguity does not arise simply because the parties offer conflicting interpretations. *Id.* at 465; *see also Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997). An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations. *Kelley–Coppedge*, 980 S.W.2d at 465. When construing the policy's language, we must give effect to all contractual provisions so that none will be rendered meaningless. *Id.* at 464.

The parties dispute whether the policy language obligates AMM to pay Schaefer for the diminished value of his fully repaired vehicle. Schaefer argues that a vehicle's diminished market value is a "direct or accidental loss" that AMM is required to compensate under the policy's insuring provision. Schaefer contends that construing the policy otherwise frustrates its underlying purpose to fully indemnify the insured. Citing as authority a number of cases from Texas and other jurisdictions, Schaefer contends that the policy language requiring AMM to pay the amount necessary "to repair or replace" with "other of like kind and quality" contemplates the payment of diminished value.[3] AMM's payment obligation is further

---

**3.** For cases finding coverage for diminished value, *see Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222 (Colo.Ct.App.2000); *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001); *Venable v. Imp. Volkswagen, Inc.*, 214 Kan. 43, 519 P.2d 667 (1974); *Ciresi v. Globe & Rutgers Fire Ins. Co.*, 187 Minn. 145, 244 N.W. 688 (1932); *Potomac Ins. Co. v. Wilkinson*, 213 Miss. 520, 57 So.2d 158 (1952); *Edwards v. Md. Motorcar Ins. Co.*, 204 A.D. 174, 197 N.Y.S. 460 (N.Y.App.Div.1922); *Pierce v. Am. Fid. Fire Ins. Co.*, 240 N.C. 567, 83 S.E.2d 493 (1954); *Dunmire Motor Co. v. Or. Mut. Fire Ins. Co.*, 166 Or. 690, 114 P.2d 1005 (1941); *Campbell v. Calvert Fire Ins. Co.*, 234 S.C. 583, 109 S.E.2d 572 (1959); *Senter v. Tenn. Farmers Mut. Ins. Co.*, 702 S.W.2d 175 (Tenn.Ct.App. 1985). For Texas cases, *see Northwestern Nat'l Ins. Co. v. Cope*, 448 S.W.2d 717 (Tex. Civ.App.—Corpus Christi 1969, no writ); *Queen Ins. Co. of Am. v. Dominguez*, 426

evidenced, Schaefer claims, by the policy's failure to expressly exclude diminished value from coverage under the policy's "Exclusions" section.

While Schaefer focuses on the "loss" language of the policy's insuring provision, AMM emphasizes the limitation of liability and payment provisions. AMM does not dispute that the term "loss" could encompass diminished value, but contends that the insuring language must be construed in light of the "Limit of Liability" section, which limits the insurer's liability to the lesser of the vehicle's actual cash value or the amount necessary to repair or replace it. According to AMM, the term "repair or replace" does not encompass any concept of "value." Like Schaefer, AMM cites cases from Texas and other jurisdictions that support its position.[4] AMM also urges our consideration of the Texas Department of Insurance's interpretation of the policy language as not obligating an insurer to pay for a fully repaired vehicle's diminished value. *See Tex. Dep't of Ins. Commissioner's Bulletin,* No. B–0027–00 (Apr. 6, 2002) ("[A]n insurer is not obligated to pay a first party claimant for diminished value when an automobile is completely repaired to its pre-damage condition. The language of the insurance policy does not require payment for, or refer to, diminished value.").

## III

■■ We agree with AMM that the policy's plain language, when read in context, giving effect to all contractual provisions, is unambiguous and does not require payment for diminished value when a vehicle has been fully and adequately repaired. While a vehicle's diminished value may be a "direct loss" under the policy's insuring provision, AMM's obligation to compensate the insured for that loss is circumscribed by the policy's "Limit of Liability" section. That section states, in pertinent part, that AMM's liability for loss is limited to the damaged vehicle's "actual cash value" or the amount needed "to repair or replace" the vehicle, whichever is less. We must give the policy language its ordinary and generally accepted meaning unless the policy shows that the words used are intended to impart a technical or different meaning. *Sec. Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979).

■ The concept of "repair" with regard to a vehicle connotes something tangible, like removing dents or fixing parts. *See* BLACK'S LAW DICTIONARY 1298 (6th ed.1990) (defining "repair" as "to

S.W.2d 286 (Tex.Civ.App.—San Antonio 1968), *rev'd on other grounds,* 434 S.W.2d 340 (Tex.1968); *Smith v. American Fire & Cas. Co.,* 242 S.W.2d 448 (Tex.Civ.App.—Beaumont 1951, no writ); *Higgins v. Standard Lloyds,* 149 S.W.2d 143 (Tex.Civ.App.—Galveston 1941, writ dism'd w.o.j.).

4. For cases finding no coverage for diminished value, *see Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720 (5th Cir.2002); *Pritchett v. State Farm Mut. Ins. Co.,* 834 So.2d 785 (Ala.Civ.App.2002); *Johnson v. State Farm Auto. Ins. Co.,* 157 Ariz. 1, 754 P.2d 330 (Ct.App.1988); *Ray v. Farmers Ins. Exch.,* 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988); *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281 (Del.2001); *Siegle v. Progressive*

*Consumers Ins. Co.,* 819 So.2d 732 (Fla.2002); *Haussler v. Indem. Co. of Am.,* 227 Ill.App. 504 (1923); *Gen. Accident Fire & Life Assurance Corp. v. Judd,* 400 S.W.2d 685 (Ky.1966); *Townsend v. State Farm Mut. Auto. Ins. Co.,* 793 So.2d 473 (La.Ct.App.2001); *Campbell v. Markel Am. Ins. Co.,* 822 So.2d 617 (La.Ct. App.2001); *Hall v. Acadia,* 801 A.2d 993 (Me. 2002); *Given v. Commerce Ins. Co.,* 440 Mass. 207, 796 N.E.2d 1275 (2003); *Lupo v. Shelter Mut. Ins. Co.,* 70 S.W.3d 16 (Mo. Ct.App.2002, transfer denied); *Camden v. State Farm Mut. Auto. Ins. Co.,* 66 S.W.3d 78 (Mo. Ct.App. 2001, transfer denied); *Spellman v. Sentry Ins.,* 66 S.W.3d 74 (Mo. Ct.App.2001, transfer denied); *Bickel v. Nationwide Mut. Ins. Co.,* 206 Va. 419, 143 S.E.2d 903 (1965).

mend, remedy, restore, renovate; to restore to a sound or good state after decay, injury, dilapidation or partial destruction"); *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 736 (Fla. 2002) (stating " 'repair' means to restore by replacing a part or putting together what is torn or broken"); *Carlton,* 32 S.W.3d at 464 (defining "repair" as "bring[ing] back to good or useable condition"). We do not believe that the ordinary or generally accepted meaning of the word "repair" connotes compensating for the market's perception that a damaged but fully and adequately repaired vehicle has an intrinsic value less than that of a never-damaged car. *See Hall v. Acadia Ins. Co.*, 801 A.2d 993, 995 (Me.2002) (stating "[t]he act of repairing an object typically focuses upon restoring the object's function and purpose, and not upon returning the object to its earlier worth or value"); *Wildin v. Am. Family Mut. Ins. Co.*, 249 Wis.2d 477, 638 N.W.2d 87, 90 (Ct.App.2001) (stating " '[r]epair' is not ordinarily understood to mean to restore to pre-broken or pre-collision market value . . ."), *rev. denied,* 252 Wis.2d 150, 644 N.W.2d 686 (2002). To expand the ordinary meaning of "repair" to include an intangible, diminished-value element would be "ignoring the policy['s] language or giving the contract['s] text a meaning never intended." *Siegle,* 819 So.2d at 738 (interpreting identical policy language).

■ A number of other state courts interpreting similar or identical policy language have expressly relied on the definition of "repair" articulated in *Carlton. See, e.g., Pritchett v. State Farm Mut. Ins. Co.*, 834 So.2d 785, 791 (Ala.Civ.App.2002) (agreeing with *Carlton's* definition of "repair"); *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 22 (Mo.App. E.D.2002, transfer denied) (agreeing with *Carlton* that the ordinary meaning of "repair" does not in-

clude value); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290 (Del. Supr.Ct.2001) (concurring with *Carlton* that "repair" means to "bring back to good or useable condition"); *Siegle,* 819 So.2d at 738 (agreeing with holding in *Carlton* ); *see also* WEBSTER'S NEW INTERNATIONAL DICTIONARY 1923 (3d ed.1961) (defining "repair" as "to fix or mend; putting together what is torn or broken"). The plain meaning of AMM's obligation under the policy's "Limit of Liability" section, paragraph 2, is to restore the vehicle, either through repair or replacement, to the same physical and operating condition it was in before the damage occurred.

■ In addition to applying the plain meaning of the policy's language, we must also read the policy as a whole, giving effect to each provision. *Kelley–Coppedge,* 980 S.W.2d at 464. Interpreting the policy's "repair or replace" language to include diminished value, as Schaefer urges, would render other provisions of the policy meaningless. The policy provides that the insured is entitled to "the lesser of" actual cash value or the amount necessary to repair or replace the vehicle. To incorporate diminished value into the "repair or replace" provision would render the "lesser of" language meaningless. The insurer's obligation to compensate the loss would be cumulative—repair or replace *and* pay diminished value—in effect insuring the vehicle's "actual cash value" in every instance and undermining the insurer's right under the policy to choose a course of action. *See Pritchett,* 834 So.2d at 791–92 (holding that insurer's option to pay the vehicle's full value or make repairs would be meaningless if the policy were read to cover diminished value); *Siegle,* 819 So.2d at 739 (same); *O'Brien,* 785 A.2d at 287 (same). It may be true, as Schaefer contends, that in some instances—say, when a very expensive car is damaged—an

insurer will spend less money if it elects to repair and pay diminished value damages rather than declare the car a total loss and pay its actual cash value. But requiring an insurer, who elects repair, to additionally pay cash for the market's diminished perception incorporates an intangible value element into the repair provision that simply does not appear in the policy's language.

Inserting the concept of diminished value into the repair provision would similarly render the policy's "Payment of Loss" section meaningless. Under this section of the policy, the insurer has an option to pay the insured in "money *or* repair *or* replace[ment]." (emphasis added). Including diminished value in the concept of repair would force an insurer that chooses to compensate a loss by exercising the repair option to also pay money, ignoring the clause's disjunctive language.

■■■ Schaefer also points to modifying language in paragraph two of the policy's Limitation of Liability provision, which refers to the

> [a]mount necessary to repair or replace the property with other *of like kind and quality.*

(emphasis added). He contends that the phrase "of like kind and quality" *modifies* both "repair" and "replace," and obligates the insurer to compensate for a damaged vehicle's pre-accident value because the word "quality" encompasses the concept of value. But whether or not intrinsic value generally inheres in the word "quality," and assuming without deciding that the phrase "of like kind and quality" modifies both "repair" and "replace," we must look to the ordinary meaning of the words that are modified. We have said that the words "repair" and "replace," with regard to a vehicle, connote something tangible, like removing dents, fixing parts, or replacing the vehicle with a comparable substitute. Thus, if an insurer elects to repair a vehicle and must replace parts in doing so, it must use parts "of like kind and quality." Likewise, if an insurer elects to replace the vehicle, it must do so with a vehicle "of like kind and quality." *See Great Tex. County Mut. Ins. Co. v. Lewis,* 979 S.W.2d 72, 74 (Tex.App.—Austin 1998, no pet.). Schaefer's interpretation strains the policy's plain terms.

■■■ Schaefer also contends that the policy covers diminished-value damages because they are not expressly excluded in the policy's "Exclusions" section. But an exclusion's purpose is to remove from coverage an item that would otherwise have been included. *Liberty Mut. Ins. Co. v. Am. Employers Ins. Co.,* 556 S.W.2d 242, 245 (Tex.1977). Absence of an exclusion cannot confer coverage. Because the policy's language does not obligate AMM to pay for the diminished value of a car that has been fully and adequately repaired, the failure to include diminished-value damages in the policy's Exclusion section is immaterial.

Schaefer agrees that his claim is governed by the contract language, but contends that the court of appeals correctly interpreted the policy. However, the court of appeals did not perform a thorough analysis of the policy language and instead relied principally on its previous decision in *Smith v. American Fire Casualty Co.,* 242 S.W.2d 448 (Tex.Civ.App.—Beaumont 1951, no writ). In that case, Smith's truck was involved in an accident and sustained significant damage. *Id.* at 449. Smith's insurance company initially denied coverage based on a policy exclusion. *Id.* Smith had the truck repaired at a cost of $615.38. The jury found that the policy covered Smith's loss, and awarded damages by calculating the difference between the truck's market value immediately before and after the collision, and then

adding the repair cost to that amount. *Id.* at 453. The court of appeals affirmed the award, holding that the meaning of the words "repair or replace" included restoring the vehicle to "substantially the same condition in which it was immediately prior to the collision." *Id.* at 453–54. The court interpreted the policy language to mean that a vehicle could not be substantially restored if "repairs left the market value of the repaired vehicle substantially less than the market value before the collision." *Id.* at 454.

In affirming the jury's market-value differential award, the *Smith* court applied a tort measure of damages that is generally designed to make an injured third party, to whom the insured may be liable, whole. *See Thomas v. Oldham*, 895 S.W.2d 352, 359 (Tex.1995). Such a damage measure may apply when the insurer's obligation is based on the policy's liability coverage, which is described in a different section of the policy and is designed to protect the insured's obligation to pay for injury to a third party that the insured's tortious conduct causes.[5] The policy's first party collision coverage, on the other hand, does not undertake to indemnify the insured against all loss that the insured's negligent conduct might cause. The insurer's liability in this context is expressly bounded by the policy's Limit of Liability and Payment of Loss provisions. The *Smith* court failed to recognize this distinction and apply the policy's terms as written.

Schaefer claims, and the court of appeals agreed, that our decision in *Superior Pontiac Co. v. Queen Insurance Co.*, 434 S.W.2d 340 (Tex.1968), supports his interpretation of the policy. 65 S.W.3d at 809. We disagree. In *Superior*, the insurer refused to return the repaired vehicle to its insured unless she agreed to accept the car as repaired and sign a release. 434 S.W.2d at 341. The insured refused to sign the release and disputed the adequacy of the repairs. The vehicle was never returned to the insured or replaced with another of like kind and quality. *Id.* at 342. Although there were jury findings from which the car's diminished value could have been calculated, we held that under the circumstances the insured was entitled to recover the vehicle's actual cash value before it was damaged. *Id. Superior* does not support Schaefer's claim that the policy language requires an insurer to pay for diminished market value in addition to the cost of repair or replacement.

Schaefer claims that, until the Fourteenth Court of Appeals issued its decision in *Carlton*, "[f]or seventy years the overwhelming weight of Texas authority had found coverage for diminished value in first-party auto cases." *See Fid. & Cas. Co. of N.Y. v. Underwood*, 791 S.W.2d 635 (Tex.App.—Dallas 1990, no writ); *Northwestern Nat'l Ins. Co. v. Cope*, 448 S.W.2d 717 (Tex.Civ.App.—Corpus Christi 1969, no writ); *Queen Ins. Co. of Am. v. Dominguez*, 426 S.W.2d 286 (Tex.Civ.App.—San Antonio 1968), *rev'd on other grounds*, 434 S.W.2d 340 (Tex.1968); *Agric. Workers Mut. Auto. Ins. Co. v. Dawson*, 424 S.W.2d 643 (Tex.Civ.App.—Tyler 1968, no writ); *Calvert Fire Ins. Co. v. McClintic*, 267 S.W.2d 568 (Tex.Civ.App.—Waco 1954,

---

**5.** We note that the Texas Department of Insurance recognizes this distinction in interpreting an insurer's obligation under the standard policy to pay diminished-value damages. After stating its position that "an insurer is not obligated to pay a first party claimant for diminished value," the Commissioner states:

An insurer also may be obligated to pay a third party claimant for any loss of market value of the claimant's automobile, regardless of the completeness of the repair, in a liability claim that the third party claimant may have against a policyholder.
*Tex. Dep't of Ins. Commissioner's Bulletin*, No. B–0027–00 (Apr. 6, 2002).

writ ref'd n.r.e.); *see also Am. Standard County Mut. Ins. Co. v. Barbee*, 262 S.W.2d 122 (Tex.Civ.App.—Fort Worth 1953, no writ), *rev'd on other grounds* 667 S.W.2d 115 (Tex.1984); *Stuyvesant Ins. Co. v. Driskill*, 244 S.W.2d 291 (Tex.Civ. App.—Fort Worth 1951, no writ); *Higgins v. Standard Lloyds*, 149 S.W.2d 143 (Tex. Civ.App.—Galveston 1941, writ dism'd), *op. on reh'ing*. Many of these cases are distinguishable, though, because the repairs at issue were either incomplete or inadequate. *See Underwood*, 791 S.W.2d at 643 (finding that a flood-damaged vehicle could never be fully restored); *Cope*, 448 S.W.2d at 718 (repairs never completed); *Queen*, 426 S.W.2d at 289 (evidence indicated repairs were inadequate); *Barbee*, 262 S.W.2d at 123 (evidence showed that more than twenty items were not properly repaired or replaced); *Driskill*, 244 S.W.2d at 292 (stolen car was never repaired or returned to insured). Also, many of these cases simply applied the *Smith* holding and/or failed to analyze all of the applicable policy language. Schaefer quotes *Higgins* extensively, but the sole issue in that case was the sufficiency of the evidence. 149 S.W.2d at 147. Although the court recited a general measure of damages that included market value, there was no discussion of the insurance policy's terms. *McClintic* does not address the issue at all, instead upholds the jury verdict on evidentiary sufficiency grounds. 267 S.W.2d at 570. And two cases Schaefer relies upon support our holding in this case, albeit in dicta. *See Roberdeau v. Indem. Ins. Co. of N. Am.*, 231 S.W.2d 948, 951 (Tex.Civ. App.—Austin 1950, writ ref'd n.r.e.) (noting that policy language did not support diminished value claim); *Dawson*, 424 S.W.2d at 645 (finding "if car can be so repaired, the insured is entitled to no more than 'what it would cost to repair the property' "). To the extent these cases are inconsistent with our holding today, however, we disapprove them.

■ We note that diminished value claims have taken different forms. *See Smither v. Progressive County Mut. Ins. Co.*, 76 S.W.3d 719, 723 (Tex.App.—Houston [14th Dist.] 2002, pet. filed). They have arisen when repairs are incomplete or faulty, or when the insurer elects to repair when declaring a total loss is the better option. *Id.* Neither is the case here. AMM elected to repair the damaged vehicle, and Schaefer does not contend that the repairs were faulty, incomplete or inadequate. If he did, then the insurer might be liable for breaching its obligations under the policy's terms. But Schaefer would still only be entitled to the remedies outlined in the policy, which do not include compensation for a fully repaired vehicle's diminished market value. We acknowledge that Schaefer's repaired vehicle may command a smaller sum in the market than a like vehicle that has never been damaged, and that awarding Schaefer diminished value in addition to repair would go further to make him whole. But we may neither rewrite the parties' contract nor add to its language. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex.1965).

## IV

Schaefer's standard automobile insurance policy does not obligate AMM to compensate Schaefer for his fully repaired vehicle's diminished market value. Accordingly, we reverse the judgment of the court of appeals and render judgment in favor of AMM.