Opinion issued March 25, 2010














     



In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00589-CV




TOMAS DURAN d/b/a DURAN INSURANCE BROKERAGE AND DURAN
INSURANCE BROKERAGE, INC., Appellants

V.

ENTRUST, INC., Appellee




On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2003-49982




MEMORANDUM OPINION

          Appellants, Tomas Duran d/b/a Duran Insurance Brokerage and Duran
Insurance Brokerage, Inc. (“Duran”), appeal the trial court’s final judgment denying
his breach of contract counter-claim and declaring that appellee, Entrust, Inc.
(“Entrust”), did not owe Duran a portion of the fees Entrust received for processing
“run-out claims” for the City of Corpus Christi (“the City”). In five issues, Duran
contends that: (1) the trial court erred in denying his motion to transfer venue from
Harris County to Nueces County; (2) the trial court erred in denying his motion for
summary judgment on his breach of contract counter-claim; (3) he is entitled to a trial
on the merits of his reasonable, necessary, and customary attorney’s fees; (4) the trial
court erred in granting Entrust’s motion for summary judgment on its declaratory
judgment claim because fact issues existed regarding Duran’s right to receive a share
of the fees under their letter agreement; and (5) the trial court erred in granting
Entrust’s motion for summary judgment because fact issues existed regarding Duran’s
right to a share of the fees under standard practice in the industry.
          We affirm.
Background
          Entrust is in the business of providing third-party medical benefit plan
administrative services to governmental entities and other organizations. Duran was
an insurance broker.


 Entrust bid for a contract to provide medical benefit plan
administrative services to the City. The City accepted Entrust’s bid and requested
that Duran serve as an intermediary between the City and Entrust.
          On January 15, 1999, Entrust and Duran signed a letter agreement that
provided:
Entrust, Inc., hereby agrees to split evenly the monthly administrative
fees paid to it by the City of Corpus Christi with Duran Insurance
Brokerage. It is agreed that the City of Corpus Christi shall pay the fees
outlined on [sic] the Administrative Contract between it and Entrust,
Inc., directly to Entrust, Inc. Upon receipt of these monies, Entrust, Inc.,
shall prepare and have delivered a check to Duran Insurance Brokerage. 
It is understood that the Plan Document preparation and printing costs
and the 25% of negotiated savings for out-of-network claims, as
identified in the Administration Contract, shall not be split and shall be
retained wholly by Entrust, Inc.
 
. . . . 
 
The split of monthly administration fees and expenses shall continue for
as long as the City of Corpus Christi and Entrust, Inc. are parties to an
administration contract. In the event of early termination of the
administration contract or the extension or replacement of such contract,
the term of this Letter of Agreement will coincide with the actual term
of the contractual relationship described above.
 
On February 10, 1999, Entrust and the City executed their contract for Entrust to
provide third-party administration services for City health care claims. The contract
was effective for a four-year term from March 1, 1999 to February 28, 2003 and
provided that Entrust would provide “group health third-party administration
services” for the City. Entrust agreed to perform a wide variety of services, including
Entrust agreeing to:
•        establish a customer service office in Corpus Christi and hire staff
to provide customer service on claims, eligibility, and benefit
issues to City insured;
 
•        provide a toll-free number for claims inquiries and customer
service questions;
 
•        supply and prepare checks and drafts for claims and payments to
medical service providers and other vendors;
 
•        conduct monthly balancing and reconciliation of a City-administered checking account and transmit electronically a
monthly check register for the account and provide other financial
services;
 
•        generate and mail the Forms 1099 to vendors and service
providers as required by the Internal Revenue Code;
 
•        provide and maintain a comprehensive pharmacy network that
includes at least two major pharmacy chains and a chiropractic
care network that includes at least five chiropractors in the
Corpus Christi area if such networks were unavailable through the
PPO Network;
 
•        forward to the City copies of all memoranda provided to it by the
Texas Department of Insurance regarding rule changes and
revisions to the law;
 
•        train customer service representatives in accordance with rule
changes and revisions to the law; and 
 
•        report claims information to the reinsurance carrier in accordance
with reporting criteria established by that carrier.
 
The administration agreement also provided that Entrust “will name one (1)
individual as coordinator to resolve all problems that may arise during the length of
this Contract. This individual will have his office located in Corpus Christi, Texas
to facilitate ease of operation.” The coordinator was to be available “one month prior
to the Starting Date of this Contract and one month after termination of this contract”
to help with the transition between carriers.
          On February 27, 2003, just before the expiration of the original contract,
Entrust and the City signed an “Extension to the Contract to Provide Administration
Services.” The extension provided that “both Entrust and the City wish to extend the
Contract for 5 months starting on March 1, 2003 and expiring midnight July 31,
2003” and that “all other terms of the Contract will remain same [sic] and will remain
in full force and effect until the new expiration date of midnight July 31, 2003.” The
extension also provided:
[U]pon the July 31, 2003 expiration of the Contract, Entrust agrees to
process, for a minimum period of three (3) months, all claims incurred
before the new expiration date. The fee for such “Run-Out Processing”
shall be the last monthly fee multiplied by 3, and shall be payable within
15 days from the beginning of the 3-month Run Out term. If, after the
end of the 3-month Run-Out term, Entrust receives claims incurred prior
to the new expiration date, then the City may request Entrust to continue
processing these claims at a fee of $12.00 per claim transaction.
 
Entrust did not enter into any further agreements with the City.
          Pursuant to the above agreements, Duran served as the coordinator between
Entrust and the City from February 1999 through July 2003 and was paid for those
services. However, Duran did not receive any portion of the payment the City made
to Entrust for processing the “run-out” claims, or claims that were incurred but not
processed before July 31, 2003, and he subsequently sent a letter to Entrust
demanding half of the fees paid for the run-out claim processing.
          On September 3, 2003, Entrust filed a petition in Harris County district court
seeking a declaratory judgment that Duran was not entitled to half of the run-out fees. 
Entrust contended that the letter agreement did not provide for the splitting of fees for
the run-out services and that Duran was not entitled to any such payment because the
administration contract with the City had expired, thus terminating any of Entrust’s
duties to Duran.
          Duran answered Entrust’s petition and filed a counter-claim against Entrust for
breach of contract. With his petition and counter-claim, Duran also filed a motion to
transfer venue, arguing that Harris County was not the proper venue because the
contractual obligation on which the suit was based was signed in Nueces County, not
Harris County, and because none of the performance of the agreement occurred in
Harris County. Entrust responded that venue was proper in Harris County because
it had conducted most of its work under the contracts in Harris County, its principal
place of business, and because it “performed the services for which [Duran has]
demanded to be paid in Harris County.”
          Duran filed a motion for summary judgment on his counter-claim for breach
of contract. The trial court denied Duran’s motion for summary judgment on May 13,
2004 and set the trial for December 2004. On November 4, 2004, Duran filed for
bankruptcy under Chapter 7 of the United States Bankruptcy Code and the case was
removed to the bankruptcy court. The case was finally remanded to the Harris
County district court on March 22, 2007.
          On October 24, 2007, Entrust filed its First Amended Petition for Declaratory
Judgment and its motion for summary judgment. Entrust provided the affidavit of
Edward Jacobson, President of Entrust, who stated that run-out fees are not part of
administration fees. Jacobson further averred that Duran did not provide any services
or participate in the processing of the run-out claims after the expiration of Entrust’s
contract with the city on July 31, 2003. Entrust also provided the affidavit of expert
Stephen Rasnick, President of Self Insured Plans LLC, who likewise stated that run-out fees are not typically part of administration fees and that brokers, like Duran, do
not normally participate in the processing of run-out claims because “[t]he processing
of ‘run out’ claims is a very limited function and does not involve or require the wide
variety of administrative services that a third party administrator would have
previously provided nor would it require the activities of a broker intermediary.” 
          On October 29, 2007, Duran filed his own motion for summary judgment on
his counterclaim. Duran contended that Entrust had breached their letter agreement
and that he was entitled to $119,217.84, or half of the fees the City paid Entrust for
processing the run-out claims. In this motion, he noted that his motion to transfer
venue remained pending. Duran provided his own affidavit, stating that he had an
agreement with Entrust and that he provided services from February 1999 through
July 2003. Duran also provided the affidavit of his expert witness, Richard Glenn
Hillyer, the Regional Sales Director for the American Administrative Group, who
opined, after looking over all the documentation, that Duran should be compensated
for the run-out claims fees that were paid to Entrust after the termination of the
administration contract.
          On November 13, 2007, Duran filed his first amended answer and affirmative
defenses and a “request for setting on motion to transfer venue,” specifically
designating that his answer and defenses were filed “subject to and without waiving”
his motion to transfer venue. Also on November 13, 2007, Duran filed his response
to Entrust’s motion for summary judgment and specifically requested that the motion
to transfer venue be set for a hearing prior to the trial court’s ruling on the motions
for summary judgment. Entrust filed a written objection to Duran’s request for a
hearing on the ground that Duran had already filed two motions for summary
judgment and had otherwise delayed seeking and obtaining a ruling on the motion to
transfer, thereby waiving his venue challenge.
          On May 28, 2008, apparently without holding a hearing, the trial court denied
Duran’s motion to transfer venue. On June 5, 2008, the trial court granted Entrust’s
motion for summary judgment and denied Duran’s motion for summary judgment. 
The trial court found that the fees paid by the City to Entrust for run-out claim
processing services were not subject to the letter agreement between Entrust and
Duran because such fees did not constitute monthly administration fees and because
the letter agreement to pay Duran monthly administration fees terminated when the
contract between Entrust and the City expired on July 31, 2003.Venue
          In his first issue, Duran contends that the trial court erred in denying his motion
to transfer venue. In his original counter-claim petition, Duran also filed a motion to
transfer venue, objecting to venue in Harris County and arguing that venue was
proper in Nueces County. Duran argued that all or a substantial part of the events or
omissions had occurred in Nueces County and that the contracts at issue were
performable in Nueces County. Entrust argues that Duran waived his objection to
venue in the trial court by “his failure to prosecute and obtain a ruling on the motion
before seeking affirmative relief from the court” in the form of two motions for
summary judgment.
          The trial court’s order does not indicate whether it denied Duran’s motion to
transfer venue because it deemed the venue objection waived or because it concluded
that venue was proper in Harris County. Thus, we address the waiver issue first. See
Carlile v. RLS Legal Solutions, Inc., 138 S.W.3d 403, 406 (Tex. App.—Houston
[14th Dist.] 2004, no pet.). We review a trial court’s determination of waiver of
venue objection for abuse of discretion. Id.
          Plaintiffs are accorded the right to choose venue first. Wilson v. Tex. Parks &
Wildlife Dep’t, 886 S.W.2d 259, 260 (Tex. 1994); Highland Capital Mgmt., L.P. v.
Ryder Scott Co., 212 S.W.3d 522, 534 (Tex. App.—Houston [1st Dist.] 2006, pet.
denied) (citing Chiriboga v. State Farm Mut. Auto. Ins. Co., 96 S.W.3d 673, 677
(Tex. App.—Austin 2003, no pet.)). When venue is not properly challenged, it is
fixed in the county in which the plaintiff filed suit. Wilson, 886 S.W.2d at 260;
Carlile, 138 S.W.3d at 406. To properly object to venue, the movant must file a
written motion to transfer prior to or concurrently with any other plea, pleading, or
motion; otherwise, the objection is waived. Tex. R. Civ. P. 86(1); Carlile, 138
S.W.3d at 406. A party seeking to challenge venue can also waive its objection by
clear, overt acts evidencing an intent to waive or by taking some action inconsistent
with an intent to pursue the motion to transfer venue. Carlile, 138 S.W.3d at 406
(citing Grozier v. L-B Sprinkler & Plumbing Repair, 744 S.W.2d 306, 309–10 (Tex.
App.—Fort Worth 1988, writ denied)). “Generally, these actions invoke the judicial
power of the courts.” Id. (citing Gentry v. Tucker, 891 S.W.2d 766, 768 (Tex.
App.—Texarkana 1995, no writ), and Grozier, 744 S.W.2d at 310). Finally, the party
seeking to transfer venue bears the burden to be diligent in requesting a setting and
obtaining a ruling on the motion prior to a trial on the merits. Id. at 408 (citing Tex.
R. Civ. P. 87(1) (providing that “determination of a motion to transfer venue shall be
made promptly by the court and such determination must be made in a reasonable
time prior to commencement of the trial on the merits” and that movant has duty to
request setting on motion), and Cliff Jones, Inc. v. Ledbetter, 896 S.W.2d 417, 418
(Tex. App.—Houston [1st Dist.] 1995, no writ)). “A delay in obtaining a hearing
provides a basis for the trial court to deny a venue motion.” Id. (citing Bristol v.
Placid Oil Co., 74 S.W.3d 156, 160 (Tex. App.—Amarillo 2002, no pet.)).
          Here, Duran properly filed his motion to transfer venue concurrently with his
original answer and counter-claim in September 2003. See Tex. R. Civ. P. 86(1);
Carlile, 138 S.W.3d at 406. However, he did not request a setting for the motion
until November 13, 2007, and the trial court did not rule on the motion until May 28,
2008, just eight days before issuing its final judgment. In the intervening time, Duran
filed a motion for summary judgment, the trial court denied this motion for summary
judgment and set a trial date, the case was removed to bankruptcy court and then
remanded to state court, and Duran filed a second motion for summary judgment and
a response to Entrust’s motion for summary judgment. While at least one of Duran’s
summary judgment motions did contain a reminder that the motion to transfer venue
was still pending, Duran made no attempt to seek a setting or ruling on his motion
until November 13, 2007, more than four years after he filed his motion to transfer
venue.
          We hold that Duran’s actions were inconsistent with an intent to pursue the
venue motion, and the motions for summary judgment in particular invoked the
judicial power of the trial court. See Carlile, 138 S.W.3d at 406. The delay of more
than four years in seeking a setting on the venue motion, even taking into
consideration the time the case was removed to the bankruptcy court, clearly provides
a basis for the trial court to deny Duran’s motion to transfer venue. See id. at 408. 
Thus, we hold that the trial court did not abuse its discretion in concluding that Duran
waived his objection to venue. Id. at 406.
          Furthermore, the trial court’s ruling was correct on the merits of Duran’s
motion. As we have already stated, plaintiffs are given the first choice regarding
venue. Highland Capital, 212 S.W.3d at 534. When a defendant challenges the
plaintiff’s choice of venue, the plaintiff has the burden to present prima facie proof
that venue is maintainable in the county of suit. See TEX. R. CIV. P. 87(2)(a),
87(3)(a); Highland Capital, 212 S.W.3d at 534; Chiriboga, 96 S.W.3d at 678. “Prima
facie proof is made when the venue facts are properly pleaded and an affidavit, and
any duly proved attachments to the affidavit, are filed fully and specifically setting
forth the facts supporting such pleading.” TEX. R. CIV. P. 87(3)(a); In re Henry, 274
S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). This prima
facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. 
In re Henry, 274 S.W.3d at 190.
          A trial court’s granting of a motion to transfer venue when the original county
selected is a county of proper venue would deprive the plaintiff of his right to select
venue. Wilson, 886 S.W.2d at 261; Highland Capital, 212 S.W.3d at 535. Thus, if
the county chosen by a plaintiff in a lawsuit is a county of proper venue, then a
county to which a suit is transferred cannot be a county of proper venue. Wilson, 886
S.W.2d at 261–62; Highland Capital, 212 S.W.3d at 534–35. Therefore, we conduct
a de novo review of the trial court’s denial of the motion to transfer venue and
determine whether there is any probative evidence that venue would have been proper
in Harris County. See Wilson, 886 S.W.2d at 261; see also Highland Capital, 212
S.W.3d at 535. If so, we must affirm the trial court’s denial of Duran’s motion to
transfer venue to Nueces County. See Highland Capital, 212 S.W.3d at 535.
          Both parties focus their venue arguments on section 15.002(a)(1) of the general
permissive venue statute.


 See Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1)
(Vernon 2002). Section 15.002(a)(1) provides, “Except as otherwise provided by this
subchapter . . . all lawsuits shall be brought in the county in which all or a substantial
part of the events or omissions giving rise to the claim occurred.” Id. To determine
whether a “substantial part” of the events giving rise to a claim occurred in a chosen
venue pursuant to section 15.002(a)(1), we examine the record in light of the claim’s
essential elements. See Chiriboga, 96 S.W.3d at 680–82 (examining essential
elements of claim in determining where substantial part of events or omissions in
declaratory-judgment action occurred). “Contract claims generally accrue in any
county where the contract was formed, where it was to be performed or where it was
breached.” Killeen v. Lighthouse Elec. Contractors, L.P., 248 S.W.3d 343, 348 (Tex.
App.—San Antonio 2007, pet. denied) (citing S. County Mut. Ins. Co. v. Ochoa, 19
S.W.3d 452, 459 (Tex. App.—Corpus Christi 2000, no pet.)).
          Duran contends that the majority of the events occurred at the small office in
Corpus Christi, relying on a provision in the agreement between Entrust and the City
requiring Duran, as the coordinator, to “have his office located in Corpus Christi,
Texas, to facilitate ease of operation.” However, Edward Jacobson, president of
Entrust, stated in his affidavit that Entrust’s principal offices are in Harris County,
that Entrust performs most of its administration duties at its Houston office and that
it specifically performed “all of the work on the run out claims from its Houston
office,” that Entrust conducted its relationship with Duran from its Houston office,
that it executed the letter agreement in Houston and sent it to Duran from Houston,
that it performed its legal obligations in Houston, and that it processed the run-out
claims and received the fees about which Duran complains in Houston. Jacobson
further averred that the small Corpus Christi office required by the City performed
only ministerial customer service tasks and was managed by the Houston office. 
Based on the affidavit provided, there is probative evidence to support the conclusion
that all or a substantial part of the events occurred in Harris County because the
contract that forms the basis of this suit was partially executed there, was performed
there to a large extent, and was allegedly breached there. See TEX. CIV. PRAC. & REM.
CODE ANN. § 15.002 (a)(1); Killeen, 248 S.W.3d at 348. Therefore, we affirm the
trial court’s denial of Duran’s motion to transfer venue to Nueces County. See
Highland Capital, 212 S.W.3d at 535.
          We overrule Duran’s first issue.
Summary Judgment
          In his second issue, Duran contends that the trial court erred in denying his
motion for summary judgment for breach of contract. In part of his fourth and fifth
issues, Duran argues that the trial court erred in granting Entrust’s summary judgment
motion for declaratory relief.
A.      Standard of Review
          We review a trial court’s grant or denial of summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). To
prevail on a traditional summary judgment motion, the movant has the burden of
proving that it is entitled to judgment as a matter of law and that there are no genuine
issues of material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339,
341 (Tex. 1995). Declaratory judgments decided by summary judgment are reviewed
under the same standards of review that govern summary judgments generally. Tex.
Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 2008); Lidawi v. Progressive
County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003,
no pet.). When both parties move for summary judgment and the trial court grants
one motion and denies the other, the reviewing court should review the summary
judgment evidence presented by both sides, determine all questions presented and
render the judgment that the trial court should have rendered. Tex. Workers’ Comp.
Comm’n v. Patient Advocates, 136 S.W.3d 643, 648 (Tex. 2004). When an order
does not identify grounds on which the trial court relied, we will affirm the summary
judgment order on appeal if any of the grounds presented is meritorious. Mellon
Serv. Co. v. Touche Ross & Co., 17 S.W.3d 432, 435 (Tex. App.—Houston [1st Dist.]
2000, no pet.). 
 
B.      Entrust’s and Duran’s Motions for Summary Judgment 
          In its motion for summary judgment, Entrust sought a declaratory judgment
that it did not owe any money to Duran because the letter agreement limited fee-splitting to monthly administration fees and the payment for run-out claim processing
was not a monthly administration fee. Entrust further argued that the payment for
run-out claim processing was not subject to the letter agreement because Entrust’s
administration contract with the City expired on July 31, 2003, and, therefore, the
parties’ obligations under the letter agreement also terminated on that date. For these
reasons, Entrust also argued that Duran could not establish that he was entitled to
judgment on his breach of contract claim. Duran argued in his motion for summary
judgment that, pursuant to the letter agreement, he was entitled as a matter of law to
receive $119,217.84, which he claimed was his proportionate share of fees paid by
the City for the processing of the run-out claims.
          To prevail on a breach of contract claim, a plaintiff must prove: (1) the
existence of a valid contract; (2) the plaintiff’s performance or tender of performance;
(3) the defendant’s breach of contract; and (4) the plaintiff’s damages as a result of
the breach. Prime Prod., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). The interpretation or construction of
an unambiguous contract is a matter of law to be determined by the court. See Am.
Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). Neither party
disputes the existence of a valid contract or argues that the contract is ambiguous, and
neither party disputes that Duran was properly paid under the letter agreement
through July 31, 2003. Thus, we must determine whether the run-out fees were
subject to the fee-splitting arrangement in the letter agreement between Entrust and
Duran. 
          By its plain language, the letter agreement provides that the fee-splitting
arrangement applied to “the monthly administrative fees” paid to Entrust by the City
as “outlined on the Administrative Contract” between them and that the fee splitting 
shall continue for as long as the City of Corpus Christi and Entrust, Inc.
are parties to an administrative contract. In the event of early
termination of the administration contract or the extension or
replacement of such contract, the term of this Letter of Agreement will
coincide with the actual term of the contractual relationship described
above.
 
The letter agreement provided that Duran was entitled to half “the monthly
administration fees” paid to Entrust by the City “as long as the City of Corpus Christi
and Entrust, Inc. are parties to an administration contract.” The original contract
between the City and Entrust was effective from March 1, 1999 to February 28, 2003
and was subsequently extended, with all terms and conditions of the original contract
remaining the same and in full force and effect, through midnight on July 31, 2003. 
Thus, under the terms of the letter agreement, Duran was entitled to half of the
monthly administrative fees the City paid to Entrust though July 31, 2003, which he
was paid.
          At the same time they entered into the extension, the City and Entrust also
formed a new agreement for Entrust to process the run-out claims for a period of three
months in exchange for a flat fee and to continue processing any remaining run-out
claims “after the end of the 3-month Run-Out term” at a fee of $12 per transaction. 
Duran argues that this new arrangement is part of Entrust’s administration contract
with the City and that he is entitled to half of the flat fee paid to Entrust to process the
run-out claims. We disagree.
          Duran’s letter agreement with Entrust provided that Entrust agreed “to split
evenly the monthly administrative fees” paid to it by the City. (Emphasis added.) 
The fee for processing the run-out claims, by the plain language of the agreement
between Entrust and the City, is not a “monthly administrative fee,” but rather a pre-determined fee paid one time. Furthermore, the run-out claim agreement was separate
from the administration agreement. The services that Entrust agreed to provide in
processing the run-out claims were different from those it provided under the
administration contract. Under the administration contract, Entrust had numerous
obligations, including providing customer service, maintaining and balancing
accounts, providing tax and compliance services, and ensuring the existence of a
pharmacy and chiropractic network, whereas processing the run-out claims only
required Entrust to finish processing “all claims incurred before the new expiration
date.” Additionally, the payment arrangements in the two agreements were different,
and the term of the run-out claim agreement, by its very nature, could not begin until
the administration contract had expired.



          We conclude that the run-out claim agreement was separate from the
administrative contract, and thus, the fee-splitting arrangement in the letter
agreement, by its plain terms, did not apply to the fees paid to Entrust for processing
the run-out claims. Therefore, the trial court did not err in granting Entrust’s motion
for summary judgment in its declaratory judgment claim and in denying Duran’s
motion for summary judgment on his breach of contract claim. See Mellon Serv. Co.,
17 S.W.3d at 435 (holding that when order does not specify ground on which trial
court relied, we will affirm summary judgment on appeal if any ground presented is
meritorious).
          We overrule Duran’s second issue and his fourth and fifth issues to the extent
they argue that the trial court erred in denying Duran’s motion for summary judgment
and in granting Entrust’s motion.
C.      Duran’s Remaining Issues
          We do not address Duran’s third issue, arguing that he is entitled to a trial on
the merits to determine his reasonable, necessary, and customary attorney’s fees,
because we have concluded as a matter of law that he was not entitled to recover on
his claims against Entrust and that he was not entitled to half of the processing fees
for run-out claims. We do not address Duran’s fourth and fifth issues, arguing that
material fact issues remained to be resolved, because we have already determined that
Duran was not entitled to the run-out claims processing fees as a matter of law, and
thus the issues of fact urged by Duran are immaterial to our disposition.


 See Am.
Mfrs. Mut. Ins. Co., 124 S.W.3d at 157 (interpreting unambiguous contract is
question of law for court to decide). Nor do we address Duran’s arguments against
Entrust’s various affirmative defenses. See Mellon Serv. Co., 17 S.W.3d at 435
(holding that when order does not specify ground on which trial court relied, court
will affirm summary judgment on appeal if any ground presented is meritorious). 
          We overrule Duran’s third issue and the remainder of his fourth and fifth
issues.
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Sharp, and Massengale.