**Affirmed in Part and Reversed and Remanded in Part and Opinion filed April 28, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00436-CV

---

### HOWARD PURVIS, Appellant

### V.

### STONEY CREEK COMMUNITY ASSOCIATION, INC., Appellee

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2017-33641**

---

## O P I N I O N

This appeal arises from a dispute between a homeowner and his homeowners' association over alleged damage to the homeowner's property caused by the alleged failure of a drainage pipe. The homeowner sued the association alleging that by failing to maintain the drainage pipe the association breached its contractual obligations under a declaration of covenants and restrictions and that the homeowner's property suffered damage as a result. The

homeowner asserted claims for breach of contract and negligence. The trial court granted the association's no-evidence motion for summary judgment. We affirm as to the negligence claim and reverse and remand as to the contract claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Howard Purvis has owned Lot 18 of the Stoney Creek subdivision (the "Subdivision") in Houston, Texas since 1979. Purvis has lived in a townhome on that lot since that time. The Subdivision includes 36 lots surrounding a single street that runs north and south. A "feeder bayou" runs directly parallel to the west of the Subdivision. The feeder bayou flows south and eventually flows into Buffalo Bayou. Lot 17 adjoins Lot 18 to the east, and the two lots are the northernmost lots in the Subdivision. The two townhomes on these two lots are the only ones in the Subdivision that face south rather than east or west. A four-foot wide drainage pipe runs through the northern extreme of Lots 17 and 18, ending at the feeder bayou (the "Drainage Pipe"). The summary-judgment evidence reflects that, "[a]ccording to [Purvis], the [Drainage Pipe] had been in place for approximately 10-15 years before the construction of the [Subdivision]."

Purvis asserts that no one maintained the Drainage Pipe and that some time before Houston's Memorial Day Flood in May 2015, a large soil mass blocked the flow of water in the Drainage Pipe about 30 to 35 feet from the feeder bayou. Purvis claims that during the heavy rainfall that led to the Memorial Day Flood, the Drainage Pipe collapsed, washing away large amounts of soil from Lot 18, and resulting in structural damage to the back of Purvis's home as well as damage to Purvis's retaining wall, sidewalk, concrete patio, deck, and balcony.

Appellee/defendant Stoney Creek Community Association, Inc. (the "Association") is the homeowners' association for the Subdivision. Palmas Properties, as Declarant, executed a "Declaration of Covenants and Restrictions for

Stoney Creek" (the "Declaration"). Purvis alleges that under the Declaration, the Association had a duty to maintain the Drainage Pipe.

Purvis filed suit against the Association asserting claims for breach of contract and negligence. Purvis alleges that under the Declaration the Association had a duty to maintain the Drainage Pipe and that the Association breached this duty resulting in damages to Purvis.

The Association filed a traditional motion for summary judgment asserting various grounds. The Association also filed a no-evidence summary-judgment motion asserting that (1) there is no evidence of the breach-of-contract element of Purvis's contract claim and (2) there is no evidence of the duty element of Purvis's negligence claim. The trial court denied the traditional motion but granted the no-evidence motion and rendered a final judgment in favor of the Association.

## II. ISSUES AND ANALYSIS

### A. Is the existence of a duty under the Declaration at issue in this appeal?

Under his second appellate issue, Purvis asserts that the question of whether the Declaration imposed a contractual duty on the Association to maintain the Drainage Pipe is not before this court because the Association challenged only the breach-of-contract element. Purvis contends that the only issue on appeal as to the contract claim is whether the summary-judgment evidence raises a genuine fact issue as to whether the Association failed to maintain the Drainage Pipe. According to Purvis, this court must presume that the Association had a contractual duty under the Declaration to maintain the Drainage Pipe.

The essential elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff

3

as a result of the breach. *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). To assert a proper no-evidence summary-judgment ground the movant must challenge one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Lamell v. OneWest Bank, FSB, L.P.*, 485 S.W.3d 53, 58 (Tex. App.–Houston [14th Dist.] 2015, pet. denied). The third essential element of a breach-of-contract claim encompasses both the contractual duty and the breach of that duty. *See Aguiar*, 167 S.W.3d at 450. In this context, the Association's no-evidence ground challenging this third element shifted the burden to Purvis to produce summary-judgment evidence raising a genuine fact issue as to whether the Association breached the contract. *See B.C. v. Steak N Shake Operations, Inc.*, —S..3d—,—, 2020 WL 1482586, at *2 (Tex. 2020); *Lamell*, 485 S.W.3d at 58; *Aguiar*, 167 S.W.3d at 450; *Udcoff v. Castille*, No. 11-04-00274-CV, 2006 WL 2075244, at *6–8 (Tex. App.—Eastland Jul. 27, 2006, no pet.) (affirming summary judgment based on ground that there was no evidence of breach of contract because plaintiff did not submit evidence of any contractual duty that the defendant allegedly breached) (mem. op.). To do so would require summary-judgment evidence raising at least a genuine fact issue as to whether the Association had a contractual duty and as to whether the Association breached that duty. *See B.C.*, —S.W.3d at —, 2020 WL 1482586, at *2; *Lamell*, 485 S.W.3d at 58; *Aguiar*, 167 S.W.3d at 450; *Udcoff*, 2006 WL 2075244, at *6–8.

Purvis cites *Chrismon v. Brown*, a case in involving a no-evidence challenge to negligence claims. *See* 246 S.W.3d 102, 114, n.12 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The essential elements of a negligence claim are (1) a negligence duty, (2) a breach of that duty, and (3) damages proximately caused by the breach of the duty. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d

4

472, 478 (Tex. 1995). Thus, if a defendant asserts that there is no evidence only as to the second element of a negligence claim, the court should presume that a negligence duty exists and then determine if the summary-judgment evidence raises a genuine fact issue as to whether the defendant breached that duty. *See Chrismon*, 246 S.W.3d at 114, n.12. Because the third essential element of a breach-of-contract claim encompasses both the contractual duty and the breach of that duty, this part of *Chrismon* is not on point in the context of a no-evidence challenge to a breach-of-contract claim. *See Chrismon*, 246 S.W.3d at 114, n.12; *Aguiar*, 167 S.W.3d at 450. So, we conclude that the Association's no-evidence ground shifted the burden to Purvis to produce summary-judgment evidence raising a genuine fact issue as to whether the Association had a contractual duty as well as whether the Association breached that duty. *See B.C.*, —S.W.3d at —, 2020 WL 1482586, at \*2; *Lamell*, 485 S.W.3d at 58; *Aguiar*, 167 S.W.3d at 450; *Udcoff*, 2006 WL 2075244, at \*6–8.

### B. Did the summary-judgment evidence raise a genuine fact issue as to whether the Association had a duty to maintain the Drainage Pipe?

Purvis asserts that the summary-judgment evidence at least raises a genuine fact issue as to whether the Association had a duty under the Declaration to maintain the Drainage Pipe. In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if

reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

Regardless of whether the parts of the Declaration that we are construing amount to restrictive covenants, we apply the same contract-interpretation principles to the Declaration. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). In construing the Declaration, our primary objective is to ascertain and give effect to the intentions of the parties as expressed in the Declaration's text. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). To determine the parties' true intentions, we examine the entire Declaration in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). Whether the Declaration is ambiguous is a question of law for this court. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Ambiguity does not arise simply because the parties offer conflicting interpretations. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). The Declaration is ambiguous if its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *See Heritage Res., Inc.*, 939 S.W.2d at 121. But, if the Declaration is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and we construe it as a matter of law. *See Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157.

### 1. *Did the Association have a duty to maintain the Drainage Pipe as a matter of law because the Drainage Pipe is a "Common Property" under article I, section (e) of the Declaration?*

Purvis asserts that under the Declaration's unambiguous language, the Association had a duty to maintain the Drainage Pipe as a matter of law because the Drainage Pipe falls under the definition of "Common Properties" in article I,

section (e) of the Declaration. Article IV, section 2 of the Declaration[1] states that "[t]he purpose of the Association in general shall be to provide for and promote the health, safety and welfare of the [homeowners who are members of the Association] [and]. . . to provide for the maintenance, repair, preservation, upkeep, and protection of the Common Properties and Facilities in Stoney Creek . . . ." Under article X, section 2, "the Association, as a common expense of all Owners, shall perpetually care for, maintain and keep in good repair the *Common Properties and Facilities* in [the Subdivision] and all parts thereof, including but not limited to . . . other improvements and the utility facilities *owned by the Association*, . . . ."[2] Under the Declaration's plain wording, the Association shoulders the duty to maintain and keep in good repair the Common Properties and the Common Facilities. Purvis asserts various arguments as to why the Drainage Pipe falls within the definition of "Common Properties."

Under article I, section (e), "Common Properties" means "all those areas of land within the Properties as shown on the Subdivision Plat, *except the Lots* and the streets not designated as Private Streets or Private Drives, together with such other property as the Association may, at any time, *acquire by purchase or otherwise . . .*"[3] Under article I, section (b), "the Properties" means "the properties described in Article III hereof, which are subject to this Declaration and any Supplemental Declaration." Article III says that "the Properties" means all of the real property in the Subdivision. Under article I, section (d), "Lots" means "the thirty-six (36) enumerated Lots shown on the Subdivision Plat.

The summary-judgment evidence shows that the Drainage Pipe lies in part

---

[1] For ease of reference, unless otherwise specified, all references to an article or a section are to that part of the Declaration.

[2] (italics added).

[3] (italics added).

of Lot 17 and part of Lot 18. The summary-judgment evidence suggests that the Drainage Pipe may begin on land to the east of Lot 17. Under the Declaration's unambiguous text, Lots 17 and 18 and the land to the east of Lot 17 are not part of the "Common Properties." Lots 17 and 18 are two of the 36 Lots expressly excepted from the definition of "Common Properties." The summary-judgment evidence conclusively proves that the land to the east of Lot 17 sits outside of the Subdivision, is not part of "the Properties," and so does not fall within the definition of the "Common Properties."

Purvis asserts that the definition of "Common Properties" does not expressly exclude utilities that cross multiple lots and that the definition does not expressly exclude utility easements. Though Purvis is correct that the definition does not contain either of these express exclusions, the absence of such exclusions does not mean that the Drainage Pipe falls within the plain meaning of the words used in this definition. The definition covers all real property within the Subdivision except for the 36 Lots and the streets not designated as Private Streets or Private Drives, together with such other property as the Association may, at any time, acquire by purchase or otherwise.[4] To the extent the Drainage Pipe has become part of the real property in which it lies, the Drainage Pipe is part of Lot 17, Lot 18, and possibly real property to the east that lies outside of the Subdivision. No summary-judgment evidence shows that the Association "acquire[d]" the Drainage Pipe "by purchase or otherwise." Because no summary-judgment evidence raises a genuine fact issue as to whether the Drainage Pipe falls within the plain text of the definition of "Common Properties," the absence of express exclusions covering the Drainage Pipe does not bring the Drainage Pipe within the scope of this definition.

---

[4] The Declaration notes that this property is subject to certain limitations, restrictions, and burdens, but that part of the definition does not add any property to the scope of the definition and is not relevant to our analysis.

Purvis states in his summary-judgment affidavit that he thinks the Drainage Pipe falls within the definition of "Common Properties" because it crosses Lots 17 and 18. Purvis's legal conclusion is incompetent to raise a genuine fact issue precluding summary judgment. *See HighMount Explor. & Prod., LLC v. Harrison Interests, Ltd.*, 503 S.W.3d 557, 569 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Purvis asserts that the following language in the definition of "Common Properties" suggests that the drafters of the Declaration intended to include utility easements in the definition: "together with such other property as the Association may, at any time, acquire by purchase or otherwise." This language does not specifically refer to utility easements; rather, it refers generally to other property that the Association acquires. Thus, presuming that this language applies to utility easements, it would apply only to utility easements acquired by the Association. Because no summary-judgment evidence shows that the Association "acquire[d]" the Drainage Pipe, Purvis's argument does not show that a fact issue exists as to whether the Drainage Pipe falls within the definition of "Common Properties."

Purvis also cites article VIII, section 5, which provides that "[s]torm sewers in the Common Property for the drainage of surface waters shall be owned, operated, maintained, and repaired by the Association." The Declaration contains no separate definition of the singular "Common Property," and under the document's plain text, this term refers to property that falls within the scope of the definition of "Common Properties." Presuming that the Drainage Pipe is a "storm sewer," no summary-judgment evidence shows that the duty in article VIII, section 5 applies to the Drainage Pipe because no summary-judgment evidence shows that the Drainage Pipe is part of the "Common Property" or "Common Properties." Purvis agrees that the duty in this section applies only to storm sewers in the

9

Common Property.  He appears to cite this provision as further support for the proposition that the Association would have a duty to maintain the Drainage Pipe if the pipe fell within the definition of "Common Properties."  Nothing in article VIII, section 5 reflects an intent that storm sewers not in the "Common Property" or "Common Properties" should be treated as if they were in the "Common Property" or "Common Properties."  Thus, this provision does not show that the Drainage Pipe falls within the definition of "Common Properties."

Under the applicable standard of review, the summary-judgment evidence does not raise a genuine fact issue as to whether the Drainage Pipe falls within the Declaration's unambiguous definition of "Common Properties." *See HighMount Explor. & Prod., LLC*, 503 S.W.3d at 565–70.

## 2. *Did the Association have a duty to maintain the Drainage Pipe under sections 1, 3, or 5 of article II?*

Purvis also relies upon sections 1, 3, and 5 of article II to show that the Association had a duty to maintain the Drainage Pipe.   Purvis cites the part of section 1 providing that "all grants and dedications of easements and related rights heretofore made by the Declarant and Declarant's predecessors in title affecting the Properties are incorporated herein by reference and made a part of this Declaration for all purposes, . . . ."  As Purvis notes, according to this provision, pre-existing easements remain in force.   But, nothing in section 1 imposes a duty on the Association to maintain the Drainage Pipe or makes the Drainage Pipe fall within the definition of "Common Properties" or "Common Facilities."

Section 3 provides that "[t]itle to any Lot conveyed by contract, deed or other conveyance shall not be held or construed in any event to include the title to any roadways or any drainage, water, gas, sewer, storm sewer,

electric light, electric power, telegraph or telephone way or any pipes, lines, poles or conduits on or in any utility facility or appurtenance thereto *constructed by or under Declarant or its agents* through, along or upon any Lot or any part thereof to serve said Lot, or any other portion of the Properties."[5] Under this section, the Declarant expressly reserved the "right to maintain, repair, sell, or lease such appurtenances . . . ." Under the unambiguous language of this provision, the Declarant reserved title and the right to maintain and repair only as to various items "constructed by or under Declarant or its agents." The summary-judgment evidence does not raise a fact issue as to whether the Drainage Pipe was "constructed by or under Declarant or its agents" and thus may fall within the scope of article II, section 3.

Purvis also relies upon article II, section 5, but that section only creates an easement of ingress and egress for the Declarant to install, replace, repair, and maintain "all utilities, including, but not limited to . . . sewer . . ." Presuming for the sake of argument that the Drainage Pipe is a utility, giving the Declarant a general easement to access all utilities if the Declarant should choose to install, replace, repair, or maintain a utility does not impose a duty on the Declarant to maintain any utility.

Under the applicable standard of review, we conclude that the summary-judgment evidence does not raise a genuine fact issue as to whether the Association had a duty to maintain the Drainage Pipe based on section 1, 3, or 5 of article II, or as to whether any of these sections cause the Drainage Pipe to fall within the scope of the definition of "Common Properties" or "Common Facilities." *See HighMount Explor. & Prod., LLC*, 503 S.W.3d at 565–70.

---

[5] (italics added).

### 3. Did the Association have a duty to maintain the Drainage Pipe because the Drainage Pipe falls within the definition of "Common Facilities" under article I, section (f)?

Purvis asserts various arguments as to why the Drainage Pipe falls within the definition of "Common Facilities," found in article I, section (f):

> "Common Facilities" shall mean and refer to "all existing and subsequently provided improvements upon or within the Common Properties except those as may be expressly excluded herein. In some instances, Common Facilities may consist of improvements for the use and benefit of the Owners of all of the Lots constructed on portions or one or more Lots, such as storage structures, fountains, sidewalks, private streets, common driveways, guest parking spaces, landscaping, force main, and other similar improvements.

To fall under the first sentence of this definition, the Drainage Pipe would have to be an improvement upon or within the Common Properties. As discussed above, the summary-judgment evidence does not raise a genuine fact issue as to whether the Drainage Pipe falls within the Declaration's unambiguous definition of "Common Properties." Under that definition, the summary-judgment evidence does not raise a genuine fact issue as to whether the Drainage Pipe is "upon or within the Common Properties."

The second sentence enlarges the definition of Common Facilities to include "improvements for the use and benefit of the Owners of all of the Lots constructed on portions or one or more Lots, such as storage structures, fountains, sidewalks, private streets, common driveways, guest parking spaces, landscaping, force main, and other similar improvements." Based on the plain text, we conclude that this sentence covers (1) improvements, (2) constructed on one or more Lots, (3) for the use and benefit of the owners of all the Lots in the Subdivision, (4) including storage structures, fountains, sidewalks, private streets, common driveways, guest parking spaces, landscaping, force main, and other similar improvements. The summary-judgment evidence raises a genuine fact issue as to whether the Drainage

12

Pipe is an improvement constructed on one or more Lots.

In a forensic engineering investigation contained in the summary-judgment evidence, two engineers state that the Drainage Pipe "provides surface drainage control" for Lots 17 and 18. The engineers state that the Drainage Pipe outflows into the feeder bayou that runs along the west side of Lot 18 and joins Buffalo Bayou to the south. The engineers also state that the Drainage Pipe "serviced the subject residence [and] the immediate neighbor to the east." We conclude that the summary-judgment evidence raises a genuine fact issue as to whether the Drainage Pipe, if functioning properly, provided for the drainage of water to the feeder bayou and thus afforded a use and benefit for the owners of Lots 17 and 18. The summary-judgment evidence also reflects that Lots 17 and 18 are the northernmost lots in the Subdivision, bordered to the west by a feeder bayou that flows down into Buffalo Bayou. In this context, we conclude that the summary-judgment evidence also raises a genuine fact issue as to whether the Drainage Pipe is an improvement for the use and benefit of the owners of all the Lots in the Subdivision.

A "force main" — listed among the examples of improvements in the "Common Facilities" definition — is a pipeline that conveys wastewater under pressure from the discharge side of a pump or pneumatic ejector to a discharge point. *City of Palmview v. Agua Specialty Util. Dist.*, No. 13-18-00416-CV, 2019 WL 1066423, at *1, n.1. (Tex. App.—Corpus Christi Mar. 7, 2019, no pet.) (mem. op.). The Drainage Pipe is an improvement similar to the exemplars in the second sentence. Based on the second sentence of the definition of "Common Facilities" and under the applicable standard of review, we conclude that the summary-judgment evidence raises a genuine fact issue as to whether the Drainage Pipe falls within the definition of "Common Facilities," so that the Association had a duty to maintain the Drainage Pipe under article X, section 2. *See Parkway Dental Assocs.,*

13

*P.A. v. Ho & Huang Properties, L.P.*, 391 S.W.3d 596, 602–07 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

### 4. *Would the application of the liberal construction mandated under Property Code section 202.003 change the analysis in this appeal?*

Purvis asserts that Property Code section 202.003(a) applies to our analysis in this case. *See* Tex. Prop. Code Ann. § 202.003(a) (West, Westlaw through 2019 R.S.). Under this statute, entitled "Construction of Restrictive Covenants," the Legislature provides that "[a] restrictive covenant shall be liberally construed to give effect to its purposes and intent." *Id.* The Supreme Court of Texas has concluded that "[a] 'restrictive covenant' is a negative covenant that limits permissible uses of land." *Tarr v. Timberwood Park Owners' Assoc., Inc.*, 556 S.W.3d 274, 279 (Tex. 2018). Though the Declaration contains negative covenants that limit the permissible uses of land, none of those covenants are at issue in this case. None of the provisions of the Declaration at issue in this case are negative covenants that limit the permissible uses of land. It would appear that section 202.003 does not apply because we are not construing any restrictive covenant. *See* Tex. Prop. Code Ann. § 202.003; *Tarr*, 556 S.W.3d at 279. Nonetheless, we conclude that we need not reach the issue of whether section 202.003 applies, because the relevant provisions of the Declaration are unambiguous and a liberal construction cannot be used as a license to contradict the plain meaning of the Declaration's provisions. *See Tarr*, 556 S.W.3d at 284–85; *State v. PR Invs.*, 180 S.W.3d 654, 665 (Tex. App.—Houston [14th Dist.] 2005) (en banc), *aff'd*, 251 S.W.3d 472 (Tex. 2008). Thus, the analysis and construction of the Declaration's relevant provisions would be the same, whether or not section 202.003 applies. *See Tarr*, 556 S.W.3d at 284–85; *PR Invs.*, 180 S.W.3d at 665. Because we conclude that all relevant provisions of the

14

Declaration are unambiguous, we overrule Purvis's fourth issue in which he asserts in the alternative that the Declaration is ambiguous.

In sum, under the applicable standard of review, the summary-judgment evidence raises a genuine fact issue as to whether the Association had a duty to maintain the Drainage Pipe under article X, section 2 because the Drainage Pipe falls within the Declaration's definition of "Common Facilities." *See Parkway Dental Assocs., P.A.*, 391 S.W.3d at 602–07.

### C. Did the summary-judgment evidence raise a genuine fact issue as to whether the Association failed to maintain the Drainage Pipe?

In a forensic engineering investigation contained in the summary-judgment evidence, two engineers state that approximately 30 to 35 feet into the Drainage Pipe from the feeder bayou, a large soil mass was completely blocking the Drainage Pipe, and their report contained a picture of this soil mass. They also reported that the Drainage Pipe "had become backwards sloped into the hillside, either from settlement at the point of the soil plug, uplift of the mouth of the pipe, or a combination of both." Based on various observations, the engineers concluded that the Drainage Pipe "had been in a state of failure for some time, perhaps years." The Association does not claim to have maintained the Drainage Pipe. Under the applicable standard of review, we conclude that the summary-judgment evidence raises a genuine fact issue as to whether the Association failed to maintain the Drainage Pipe, thus breaching any contractual duty the Association had to maintain the Drainage Pipe. *See* id.

The summary-judgment evidence raises genuine fact issues as to (1) whether the Association had a duty to maintain the Drainage Pipe under article X, section 2 because the Drainage Pipe falls within the Declaration's definition of "Common Facilities" and (2) whether the Association failed to maintain the Drainage Pipe. Therefore, the trial court erred in granting summary judgment as to the contract

claim on the sole ground of no evidence of breach of contract. To this extent, we sustain Purvis's second and third issues, and we reverse and remand as to the breach-of-contract claim. *See* id. 602–10. Otherwise, we overrule the second and third issues.

**D. Did the trial court err in granting summary judgment as to the negligence claim because the Association's no-evidence-of-negligence-duty ground was improper?**

In his first issue, Purvis asserts that the Association's no-evidence ground challenging the existence of a negligence duty involved a purely legal issue — the interpretation of the Declaration — and so was not a proper basis for a no-evidence summary judgment. Under Supreme Court of Texas precedent and Fourteenth Court of Appeals precedent, the Association's no-evidence-of-duty ground was a proper no-evidence ground challenging an essential element of Purvis's negligence claim. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310–11 (Tex. 2014) (affirming trial court's grant of a no-evidence summary judgment based on a no-evidence-of-negligence-duty ground even though high court noted that "[d]uty presents a legal question" and holding that the movants owed the plaintiffs no negligence duty as a matter of law because the plaintiffs were trespassers); *Chrismon v. Brown*, 246 S.W.3d 102, 112, 114, n.12 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (disagreeing with dissenting justice's conclusion that the court could not adopt the inherent-risk doctrine because no party specifically asserted this doctrine in the trial court and because no summary-judgment ground before the court of appeals raised the issue given that the movant "asserted a no-evidence ground in which it attacked the essential element of duty").

In *Chrismon*, the dissenting justice concluded that the majority could not adopt the inherent-risk doctrine because no party specifically asserted this doctrine in the trial court and because no summary-judgment ground before the court of

16

appeals raised the issue. *Chrismon*, 246 S.W.3d at 112, 114, n.12. The *Chrismon* court disagreed with the dissenting justice because (1) the movant in *Chrismon* "asserted a no-evidence ground in which it attacked the essential element of duty"; (2) "[w]hether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question"; and (3) "[i]n its motion, [the movant] asserted that there is no evidence of this essential element of [one plaintiff's] claims" and therefore "the burden shifted to [that plaintiff] to point to and present evidence that raised a genuine issue as to whether there is a legal duty." *Id*. at 114, n.12. The *Chrismon* court held that the no-evidence summary judgment movant "was not required to outline in its motion the legal analysis under which it claims no duty arises under the facts and circumstances surrounding this occurrence." *Id*.

Purvis relies on the fact that the trial court denied the Association's motion for a traditional summary judgment and that the Association asserted in that motion that it owed Purvis no negligence duty as a matter of law. That the trial court denied a traditional summary-judgment motion that attacked the same element of a claim does not preclude this court from affirming the trial court's granting of a no-evidence motion on the same element if the appellant has not shown any error in the no-evidence summary judgment.

Purvis cites several cases from sister courts of appeals. The cited portions of some of these cases amount to obiter dicta and thus lack precedential value. In any event, these cases, unlike *Boerjan* and *Chrismon,* do not bind this court. *See Boerjan*, 436 S.W.3d at 310–11; *Chrismon*, 246 S.W.3d at 112, 114, n.12. In today's case, Purvis alleged in his petition that the Association had a negligence duty to maintain the Drainage Pipe. In this context, the Association's no-evidence ground challenging the existence of a negligence duty shifted the burden to Purvis

17

to produce summary-judgment evidence raising a genuine fact issue as to whether the Association had a negligence duty to maintain the Drainage Pipe. *See B.C.*, — S..3d at —, 2020 WL 1482586, at *2; *Koonce v. First Victoria Nat'l Bank*, No. 143-10-00282-CV, 2011 WL 3854453, at *6 (Tex. App.—Corpus Christi Aug. 31, 2011, no pet.) (mem. op.). Purvis does not argue on appeal that he satisfied this burden, so we do not address this issue. Because the law allows the Association's no-evidence ground challenging the essential element of duty as to the negligence claim, we overrule Purvis's first issue, which is his only challenge to the summary judgment on that claim.

### III. CONCLUSION

The summary-judgment evidence raises genuine fact issues as to (1) whether the Association had a duty to maintain the Drainage Pipe under article X, section 2 because the Drainage Pipe falls within the Declaration's definition of "Common Facilities" and (2) whether the Association failed to maintain the Drainage Pipe. Thus, the trial court erred in granting summary judgment as to the contract claim on the ground of no evidence of breach of contract. The law permits the Association's no-evidence ground challenging the essential element of duty as to the negligence claim, and Purvis has not shown that the trial court erred in granting summary judgment as to this claim. Therefore, we affirm the trial court's judgment as to the negligence claim, reverse the judgment as to the contract claim, and remand to the trial court for further proceedings consistent with this opinion.


/s/     Kem Thompson Frost
        Chief Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.

18